WILLIAM H. WEBER *et al.* V. THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY.

1. PRACTICE—*Averments and Admissions—Liberal Interpretation.* After the pleadings of the parties had been filed, a trial begun, and each party had made a statement of the case to the jury, an objection was made to the admission of any testimony, upon the ground that the petition, in connection with the statements made in behalf of plaintiffs, failed to show a right of recovery. A colloquy then ensued between the court and counsel for plaintiffs, in which some admissions were made by the latter. The court then sustained the objection, took the case from the jury, and dismissed the action, holding that, under the averments of the petition and the admissions of the parties, no recovery could be had. *Held,* That, under those circumstances, the averments and admissions of the plaintiffs should receive a liberal interpretation in their favor.

2. RAILROAD CROSSING— *Climbing Over Cars—Contributory Negligence.* While the general rule is that those who climb over or under a train of cars which has made a temporary stop, and apparently will soon move on, do it at their peril, yet, in a case where detached cars have been left standing for more than an hour across a public street, one of which is a caboose, and the steps and platform of which are in line with the street, and a person approaching, who has an unobstructed view of that track and sees no locomotive or train thereon, and after using care to discover whether there is danger of the removal of the cars, and finding none, attempts to cross over the platform and steps of the caboose, and is injured, it cannot be *held,* as a matter of law, under the circumstances surrounding this case, that such person, in making the attempt, was guilty of contributory negligence.

3. CARS *Standing on Street—Signals and Warnings.* Where detached cars have been left standing for a long time over a public street in common use, it is the duty of those in charge of an approaching train, upon the same track, with a view of connecting or moving such cars, to give due signals and warnings of their approach, so that those upon the street who might be near the standing cars should have an opportunity to get out of danger.

## *Error from Cowley District Court.*

THE plaintiffs, who are the next of kin to Myrtle G. Weber, deceased, brought this action to recover the damages suffered by them in the death of Myrtle G. Weber, caused, as they

allege, by the wrongful act and neglect of the railroad company. The petition, after alleging the corporate character of the defendant, and that it owned and operated a certain railroad, states:

"That on the 17th day of March, 1889, these plaintiffs were the parents and next of kin of one Myrtle G. Weber, an infant of the age of 16 years, then residing with said plaintiffs at the city of Winfield, Cowley county, Kansas; that on said day said Myrtle G. Weber was traveling along and upon a certain street known as Fuller street, in the city of Winfield, in the county of Cowley, state of Kansas, which said street is a public highway, and said street and public highway crosses the track of the defendant's railway in said city of Winfield, Kas.; and when said Myrtle G. Weber reached said crossing, the defendant had three cars attached to a caboose standing on its track and across said street and public highway. Said three cars attached to said caboose had so been standing across said street and public highway for more than one hour preceding the injury hereinafter alleged, and in violation of § 1 of ordinance No. 284, of the city of Winfield, Kas., and other ordinances of said city; and while said Myrtle G. Weber was attempting to cross said track of said defendant at said crossing, the defendant, by its servants, caused one of its locomotives and train of cars to approach said crossing, by backing and passing rapidly over and along the track of the said railroad, and ran said locomotive and cars with carelessness and gross negligence, and striking the said three cars attached to said caboose which were upon the same track, and negligently and carelessly omitted, while so approaching said crossing, to give any signal, by bell, or whistle or lights or otherwise, by reason whereof, the said Myrtle G. Weber was unaware of the approach of said locomotive and train which was backing, and by reason of said gross negligence of the defendant, and in violation of § 1, ordinance No. 355, of the city of Winfield, Kas., (and without any fault or negligence of the said Myrtle G. Weber,) the locomotive and train of cars struck the said Myrtle G. Weber, with great violence, to the ground, and under the wheels of the cars of the defendant, and dragged her, the said Myrtle G. Weber, while so under the wheels of the defendant's cars as aforesaid, for more than 50 feet along and over the track of the defendant, thereby breaking and fracturing the left lower limb, and lacerating, man-

gling and tearing the flesh from the left lower limb, and otherwise injuring the said Myrtle G. Weber; that by reason of said injuries the said Myrtle G. Weber, on the 20th day of March, 1889, did die; and that no personal representative is or has been appointed of or for said deceased; and that by reason of said injury and death of said Myrtle G. Weber these plaintiffs have been damaged in the sum of $10,000."

The answer of the defendant was a general denial. At the trial, one of the attorneys for plaintiffs made an opening statement. After reading the petition, he said:

"And in order that you may understand the nature of this case, on the 17th day of March, 1889, Myrtle G. Weber and her mother, in company with a lady by the name of Keith, came down to Fuller street to the crossing, where it crosses the Southern Kansas railroad, on their way to church that evening. It will appear in evidence that there was a caboose standing across the track, across Fuller street and the sidewalk; that there was no engine attached to either of these three cars or caboose, and while they were attempting to cross the track, an engine, attached to 14 or 15 other cars, came backing down on the track and struck these three cars and caboose. They were running at a rapid rate of speed, and, just as they were attempting to cross this track, threw this girl under the wheels. These cars had been standing there for a long time, as we allege, in violation of certain ordinances; that after she was thrown under the wheels she remained there or was dragged about 50 feet from the place where she was first thrown under, and remained there perhaps 20 or 30 minutes before she was rescued; that then she was taken out and taken home, and that by reason of the injuries which she received there that night, that upon the 20th day of March, 1889, she died. We expect to show that there was no fault upon the part of the girl or her mother, and that the railroad company was grossly negligent in backing the train of cars down without any signal — neither the bell, whistle or lights. We expect, further, to show that there was no light upon this caboose. It was dark — after dark — the time it occurred. There was no light on the caboose, nor neither was there a brakeman at the crossing, and as the train backed up — the 14 cars and engine — there was no brakeman there with a lantern or any other signal. That is, in brief, our case."

After the defendant stated its case to the jury, a witness was called by plaintiffs, but the defendant objected to the introduction of any evidence, because the petition, in connection with the admissions made by the attorneys for plaintiffs, showed that they were not entitled to recover. The court then took up the petition and examined the same, making some comments, when his attention was called to the case of *Howard v. K. C. Ft. S. & G. Rld. Co.*, 41 Kas. 403. After discussing that case, the following colloquy between the court and counsel for plaintiffs occurred:

"Court: Our supreme court says that the climbing over, under those circumstances, so contributed to the disaster that they cannot recover."

"By the attorney for plaintiffs: These were detached cars."

"By the court: If they were detached and standing apart so that there was an opportunity to pass through; that the cars were near together; that there was an opportunity to walk through there, and while attempting to walk through, however narrow the place, if there was space enough there, then, certainly, the defendant must be on its guard as well as all other parties."

"By attorney for plaintiffs: I mean they were detached from the main train."

"By the court: Three cars are long enough to reach across a whole crossing."

"By attorney for plaintiffs: That is a fact."

"By the court: If that is to be the proof here finally, I had just as well sustain this objection now as any other time. The only thing that is here now is, whether a fair and liberal construction of this petition would compel us to say she must have been climbing over the train; that is all there is in it now; either climbing over it or going under it at the time of the injury. It seems to me that is the irresistible conclusion from the other statements of the petition. She could n't have been going any other way. If that is so, that ends the case."

"By attorney for plaintiffs: It will appear as a fact that she was passing over the steps of the caboose when the accident occurred. I do n't desire to prolong the case, if your honor takes that view of the case. It will appear that she was attempting to pass over the front steps of the caboose; that the engine and cars were not at that time in sight—the other part of the train—and that they backed down and struck

the caboose.   The petition alleges that they were not attached to the main train, and had n't been for an hour.   I would as lief your honor would pass upon it at this time as at any; I would rather."

"By the court: In view of the statements and admissions just now made by the counsel of the plaintiffs in this case, the court will sustain the objection of the defendant to the introduction of any evidence under the petition in this case." (To which ruling of the court the plaintiffs, by counsel, at the time excepted.)

"By the court: What do you want to do with this petition?   Do you want leave to amend?"

"By attorney for plaintiffs: Yes, sir; we would like leave to amend."

" By attorney for defendant: They have had two chances to amend, and in view of the statements of the counsel they can't better it."

"By the court: I am disposed to give them leave to amend on terms."

"By attorney for plaintiffs; Mr. Half hill can take his chances as to that; I have no choice."

"By the court: I will give you leave to amend on condition that you pay all costs for the term, or else I will dismiss the case for you."

"By attorney for plaintiffs: You can make that order as far as I am concerned.   I have stated the facts; I do n't care about alleging them any further; Mr. Half hill can do as he likes."

"By the court: The case will be dismissed, at the cost of plaintiffs."

A motion for a new trial was made and overruled, and the plaintiffs bring up the rulings of the court upon a case-made, and ask for a review and a reversal.


*Torrance & Torrance*, for plaintiffs in error:

1. The conduct of the deceased in passing over the front steps of a caboose, which, together with the cars attached, obstructed the public crossing, and were there in violation of the city ordinances, does not amount to contributory negligence in a degree affecting plaintiff's right to recover, when the negligence of the defendant is gross. See *W. & W. Rld. Co. v. Davis,*

37 Kas. 743; *C. K. & W. Rld. Co. v. Fisher,* 49 id. 461; *Cremer v. Town of Portland,* 22 Wis. 625; *Meeks v. S. P. Rld. Co.,* 56 Cal. 513; 8 Am. & Eng. Rld. Cas. 314, 319, 320; *Railroad Co. v. Boudson,* 92 Pa. St. 475; *Morrissey v. Ferry Co.,* 47 Mo. 521; Thomp. Carr. Pass. 243; *Tuff v. Worman,* 2 C. B. N. S. 740; Pollock, Torts, 375–377; 4 Am. & Eng. Encyc. of Law, 27; *Donohue v. St. L. &c. Rld. Co.,* 90 Mo. 314; *Baltimore &c. Rld. Co. v. Kean,* 28 Am. & Eng. Rld. Cas. (Md.) 580, 584; *Desmond v. Brown,* 29 Iowa, 54; *L. L. & G. Rld. Co. v. Rice,* 10 Kas. 426.

It is gross negligence to run a train of six or eight cars without a brakeman. *T. W. & W. Rly. Co. v. McGinnis,* 71 Ill. 346.

We presume it will be conceded that if the detached cars and caboose had been the only cars on the track, and there was no engine in sight, it would not be negligent or imprudent to pass over the platform. So it certainly appeared to deceased; and before she is chargeable with negligence, within the meaning of the law, it must appear that with ordinary care she could have discovered the approaching danger. When she had used her senses of sight and hearing, and was unable to see any signal light or hear any whistle or bell, or other evidence of the approaching train, had she not used ordinary care and caution? See *C. B. U. P. Rld. Co. v. Hotham,* 22 Kas. 50; *McBride v. N. P. Rld. Co.,* 23 Pac. Rep. 814; *Railroad Co. v. Hillmer,* 72 Ill. 235; *Wabash Rly. Co. v. Henks,* 91 id. 406; *Weber v. Railroad Co.,* 58 N. Y. 451; *W. & W. Rld. Co. v. Davis,* 37 Kas. 743.

It cannot be successfully urged that deceased was a trespasser. It is only when trains are running across public highways or thoroughfares in cities, in the usual conduct of their business, or standing across them for the time allotted by law, that they have the exclusive use thereof. While thus occupying the highway or street in a lawful manner, the railroad company has the exclusive use of such thoroughfares for the time being, and any person attempting to travel thereon while thus lawfully occupied would be, in a mild sense, a

trespasser upon the company's rights; but when a railway company unlawfully obstructs the streets by appropriating them to its exclusive use for a longer time than is allowed by law, or by backing its trains through the streets at an unlawful rate of speed, and in a negligent manner, it becomes a trespasser upon the rights of the citizens to use those thoroughfares, is a wrongdoer itself, and is estopped to urge that deceased was guilty of negligence, and was a trespasser in using her right to pass along the public street by passing over the obstruction placed thereon by such railroad company, at a point where there appeared to be the least danger. See *Burger v. Mo. Pac. Rly. Co.*, 112 Mo. 238.

2. The degree of negligence of both parties, and whether or not the negligence of deceased contributed materially to her injury, and whether or not an ordinarily prudent person would have taken the risk under the circumstances as disclosed by the record, are questions of fact for the jury. See *W. & W. Rld. Co. v. Davis*, 37 Kas. 743; *Mo. Pac. Rly. Co. v. McCally*, 41 id. 639; *Harlan v. St. L. K. C. & N. Rld. Co.*, 64 Mo. 480; *K. P. Rly. Co. v. Pointer*, 14 Kas. 39; *Bernard v. Railroad Co.*, 1 Abb. Ct. App. 131; *Weber v. Railroad Co.*, 58 N. Y. 451; *A. T. & S. F. Rld. Co. v. Morgan*, 43 Kas. 1; *Burger v. Mo. Pac. Rly. Co.*, 112 Mo. 238; Beach, Con. Neg., § 117; *Eswin v. Railroad Co.*, 96 Mo. 295, 9 S. W. Rep. 577; *O'Flaharty v. Railroad Co.*, 45 id. 70; *Plumley v. Birge*, 124 Mass. 57; *Miebus v. Dodge*, 38 Wis. 300; *Railroad Co. v. Young*, 81 Ga. 397, 7 S. E. Rep. 912.

In the case at bar, deceased was a minor aged 16 years, and we contend that the degree of discretion or capacity which should be attributed to her is a question of fact, depending upon the proof, for the jury; the question whether or not she exercised that degree of care which would be expected from one of her age and capacity under like circumstances, and whether or not the conduct of the defendant's employés was reckless and wanton in running their train backward, under all circumstances which may be shown under the petition, are questions of fact for the jury.

*A. A. Hurd*, and *Robert Dunlap*, for defendant in error:

1. The deceased was a trespasser, and the defendant, therefore, cannot be held liable, unless shown to be guilty of a willful or wanton act causing the injury, after the discovery of the perilous situation of the deceased.

Although it is true that the deceased had the lawful right to use this street or the sidewalks, the same as any other pedestrian, yet this gave her no right to clamber upon the cars or the property of the railroad company, although the same might be temporarily standing in the street. In doing so she was undoubtedly a trespasser. See *Catlett v. Railroad Co.*, 21 S. W. Rep. 1062; *A. T. & S. F. Rld. Co. v. Plaskett*, 47 Kas. 107; *Montgomery v. Railroad. Co.*, 12 S. Rep. 170. See, also, *McGuiness v. Butler*, 34 N. E. Rep. 259; *Mitchell v. N. Y. L. E. & W. Rly. Co.*, 146 U. S. 513; *Gaughan v. Philadelphia*, 119 Pa. St. 503; *Chicago St. Rly. Co. v. Thurston*, 43 Ill. App. 587; *Tennis v. Rapid Transit Rly. Co.*, 45 Kas. 503; *K. P. Rly. Co. v. Whipple*, 39 id. 531.

She was not injured until she had placed herself upon the cars in a position of danger, and her own act was the direct and proximate cause of the injury, and the violation of the city ordinance in permitting the cars to stand upon the street was remote. See *Hudson v. Wabash Rly. Co.*, 27 S. W. Rep. 717, 718; *Lowry v. St. L. & H. Rly. Co.*, 40 Mo. App. 554; *Stanton v. L. & N. Rld. Co.*, 8 S. Rep. 798. The case of *Barkley v. Mo. Pac. Rly. Co.*, 9 S. W. Rep. 793, is directly in point. See, also, *Barrett v. Smith*, 14 N. Y. Supp. 307.

2. The deceased was guilty of contributory negligence as a matter of law in attempting to cross over by climbing upon the caboose standing upon this street.

It is admitted in this case that the injury was caused by reason of the deceased climbing upon the caboose attached to a freight car standing upon the highway. It is claimed that the accident occurred in the nighttime, when it was so dark that she could not see the engine with cars attached approaching these stationary cars. If that admission be true, it ren-

ders her act all the more negligent. It is settled by a vast number of authorities that one who attempts to cross over by climbing upon cars standing upon a highway, although he may do so at the invitation or on the assurance of brakemen or others, yet his act is so negligent as to constitute contributory negligence, and there can be no recovery for any injury which may be occasioned or result to him in such a position. This is settled by the decision of this court in the case of *Howard v. K. C. Ft. S. & G. Rld. Co.*, 41 Kas. 403; same case, 21 Pac. Rep. 267. See, also, *L. S. & M. S. Rly. Co. v. Pinchin*, 112 Ind. 592; same case, 35 Am. & Eng. Rld. Cas. 383; *Hudson v. Wabash Rly. Co.*, 14 S. W. Rep. (Mo.) 15; *Hudson v. Wabash Rly. Co.*, 27 id. 717; *Flynn v. Eastern Rly. Co.*, 53 N. W. Rep. 494; *Andrews v. Central Rld. Co.*, 12 S. E. Rep. 213; *Bird v. F. & P. M. Rld. Co.*, 48 N. W. Rep. (Mich.) 691; 1 Thomp. Neg., 429; *Stillson v. H. & St. J. Rld. Co.*, 67 Mo. 671; *O'Mara v. D. & H. C. Rld. Co.*, 18 Hun, 192; *Pannell v. N. F. & S. Rld. Co.*, 12 S. Rep. 236; *Mau v. Morse*, 33 Pac. Rep. (Colo. App.) 283.

3. The deceased, though a minor 16 years of age, must still be held to have been guilty of contributory negligence.

It is asserted, in the brief of the other side, that because the deceased was a minor the question of her contributory negligence was for the jury. The authorities cited are cases in which the minor was under the age of 12 years. The rule upon this subject is well stated by Mr. Justice Paxson in the case of *Nagle v. Allegheny Valley Rld. Co.*, 88 Pa. St. 39, 40. See, also, *Tucker v. N. Y. C. & H. R. Rld. Co.*, 26 N. E. Rep. 916, 918; *Schmidt v. Cook*, 20 N. Y. Supp. 889; *Wendell v. Railroad Co.*, 91 N. Y. 420; *Knox v. Steam Power Co.*, 23 N. Y. Supp. 490; *Reynolds v. N. Y. C. & H. R. Rld. Co.*, 58 N. Y. 248; *L. R. & Ft. S. Rld. Co. v. Dinsemann*, 16 S. W. Rep. (Ark.) 169; *Meredith v. R. & D. Rld. Co.*, 13 S. E. Rep. (N. C.) 137; *Merryman v. C. R. I. & P. Rly. Co.*, 52 N. W. Rep. (Iowa) 545; *Masser v. C. R. I. & P. Rly. Co.*, 68 Iowa, 605; *Studley v. St. P. & D. Rld. Co.*, 51 N. W. Rep. (Minn.)

115; *Twist v. W. & St. P. Rld. Co.*, 37 Am. & Eng. Rld. Cas. 336.

The opinion of the court was delivered by

JOHNSTON, J.: It is an unusual practice to dispose of a case upon the petition and meager statements such as were made by counsel for the plaintiffs. It seems that the court was proceeding to determine the sufficiency of the petition upon objection to the admission of any testimony, and was inclined to hold that its averments showed contributory negligence on the part of the deceased, under the rule in the case of *Howard v. K. C. Ft. S. & G. Rld. Co* , 41 Kas. 403, when a colloquy ensued between court and counsel for plaintiffs as to the inferences that were to be drawn from the allegations of the petition, and at that time some statements or admissions were made by counsel for plaintiffs. The court took the case from the jury, holding that, under the averments of the petition and the admissions just then made, no recovery could be had. Under those circumstances, the averments and claims of the plaintiffs should receive a liberal interpretation in their favor, and looking at them in that view, we think the ruling of the court cannot be sustained.

1. Practice— averments and admissions—liberal interpretation.

The petition alleges negligence on the part of the company in placing three cars and a caboose across a public street of the city, in violation of an ordinance, where they were allowed to remain for more than an hour before the injury occurred; that while Myrtle G. Weber, an infant of 16 years, was attempting to cross the tracks at the crossing of the street, the company, in violation of another city ordinance, backed a locomotive and train of cars rapidly down the track, without any lights, signals or warnings of any kind, against the three cars and the caboose standing across the street, with great violence, striking Myrtle and knocking her down, by reason of which, and without any fault or neglect on her part, she was crushed and mangled in such a way that her death resulted from the injuries about three days later. From the admis-

sions made, it appears that the cars standing across the street were not attached to any locomotive, and no one was in charge of them, and although it was night there was no light in the caboose nor on or about any of the cars.     When Myrtle and those with her approached the crossing, on their way to church, they found the street obstructed, and the steps and platform of the caboose, which adjoined one of the freight cars, were in line with the street.     Myrtle then started across the steps and  platform of the caboose, when she was thrown off and under the wheels, in the manner alleged.     Daylight had gone, but how dark the night was does not appear. When she attempted to cross, the locomotive and cars attached to it, which were subsequently backed down against the detached cars, could not be seen, and how far they could have been seen with an unobstructed view on that night is not shown.

The remarks of the court when the decision was made indicate that the rule of the Howard case was deemed to be applicable and controlling in this.     There, however, as will be seen, the injury resulted from jumping off a car on which the woman had climbed, and no act of the railroad company was the proximate cause of her injury.     It is generally held that those who climb over or under a train, the locomotive of which is steamed up and apparently ready to move, do so at their peril; the same rule applies with respect to those who attempt to cross over the bumpers or couplings between the cars of a freight train in like condition; and this is upon the principle that those who voluntarily assume a position so obviously dangerous cannot complain of injuries received while in such position.     The crossing, however, upon the steps and platform of a caboose or passenger car, detached from the engine or from the train, and when there are no indications of a removal, is hardly parallel with a crossing made over or under a train which has made a temporary stop, and, in the nature of things, will soon be moved.     In this instance the detached cars had stood for a long time upon the street, and who could tell when they would be moved, or whether

they would be moved at all during the night? So far as shown, there was nothing to indicate that they were soon to be attached to or put into a train. Taking the record as it is, there was no light in or upon them, no one was present who had charge of them, and no train or locomotive was seen approaching to connect with them.

The steps and platform of the caboose were in range with the walk upon the street along which Myrtle was passing, and they were provided as a safe and suitable means for entering and leaving the caboose. They afforded a passage across the train which under some circumstances would be reasonably safe, while under others an attempt to cross thereon would be necessarily perilous. She was entitled to the use of the street, and while the negligence of the company in blockading it may not have been the proximate cause of the injury, it cannot be said that the company was free from negligence in the manner in which it approached and collided with the detached cars which stood over the street. The cars having stood for so long a time over a street in common use, it was the duty of those in charge of the approaching train to give proper signals and warnings of its approach, so that those upon the street who might be near the train should have an opportunity to get out of danger. Instead of giving such signals or warnings, it is stated that the train was rapidly backed down, with no lights or signals of any kind, and no brakeman or guard on the rear of the train, to notify persons upon the crossing of its approach. It is stated that it was run down at a very rapid rate of speed in the manner indicated, in violation of a city ordinance regulating the movement of trains within the limits of the city. It is certain that the allegations are sufficient to charge negligence in the company, and the question is whether, under the averments of the petition and the meager statement of facts brought to the attention of the court, it can be said as a matter of law that the deceased was guilty of contributory negligence in attempting to cross. The general rule is, that when the question of contributory

3. Cars standing on street — signals and warnings.

negligence depends upon circumstances from which different minds might arrive at different conclusions, the question should be submitted to a jury, under proper instructions.

How can it be said, in the light of the surrounding circumstances, that the danger in attempting to cross the track in the manner in which she did was so obvious that a person of ordinary prudence would not have made the attempt? If an unobstructed view of the track could have been had, and if she stopped and carefully looked and listened for the approach of the train, and none was seen or heard, and then she ventured to pass over the steps and platform, can it be said as a matter of law that she was guilty of contributory negligence? It is said that she was an infant, and how capable and well developed she may have been was not brought out in the running talk which occurred between the court and counsel just before the case was dismissed. In view of the allegation that she was not negligent, and in the absence of any statement to the court to the contrary, we may assume that she did exercise care before attempting to cross, and did stop, look, and listen for the approach of a train on the track whereon the detached cars were standing. It is not always held to be negligence to pass around or between detached cars standing upon a street. In every case the question is, whether there is such an obvious danger and such a probability of injury as would deter a reasonably prudent person from assuming the risk of passing through or around such cars. If the risk is great, and such as a prudent person would not assume, then one who assumes the risk is guilty of negligence which will preclude a recovery for any injury suffered. Under the circumstances of this case, how can it be said that there would have been any less risk in going behind or around the caboose than over the steps and platform which were intended for the use of people in entering and leaving such caboose?

Of course, a high degree of care is required of one who attempts to cross over or around cars standing upon a street, and if a person attempts to cross when there is an obvious

26—54 KAS.

danger that the train will be moved at any time, he is guilty of negligence. If Myrtle knew or should have known that these cars were part of a train which had been broken in two, and that one part would soon be backed up and united with the other, and if she then ventured to cross the street without looking along the track to see whether the locomotive and other cars were coming, or if her view was obscured by obstructions or darkness so that she could not see the approach of such a train, and then attempted to cross without taking any care to learn that there was a present danger in crossing, she would be guilty of negligence in making the attempt. The cars, however, as we have seen, were detached, at a standstill, and, so far as we can see, there were no indications to Myrtle that the cars would be moved before she could effect a passage over the platform and steps in safety.

It is true that the position of the cars on the street would ordinarily give rise to the inference that they would be moved, but how soon they would be set in motion was not apparent, and the question is whether, in view of the special circumstances of the case, she exercised reasonable care in attempting to cross. We are unwilling to say that her conduct was contributory negligence *per se*, and while there is doubt of plaintiffs' right of recovery, we think, under the circumstances, that it is such a case as should be left to a jury. Submitted as this case was, the averments and statements of the plaintiffs should be given the most favorable consideration they will reasonably bear. Taking them in that way, we think the dismissal of the case was error.

2. Railroad crossing—climbing over cars—contributory negligence.

Some question is raised as to whether all the admissions are contained in the record, but, as recited there, it is evident that all upon which the court acted are contained in the record. The judgment of the district court will be reversed, and the cause remanded for another trial.

All the Justices concurring.