## The Chicago, Rock Island & Pacific Railway Company v. Leila V. McBride.

1. Petition — *Amendment to Meet Proof.* An amendment to a petition for the alleged purpose of conforming to the verdict and special findings of the jury, which does not strengthen the plaintiff's allegations nor really change the petition as construed by the trial court, is at most a mere irregularity, and not prejudicial to the defendant's rights.

2. Railroad Company — *Damages Caused by Fire — Evidence.* In an action to recover damages from a railway company caused by fire, the trial court ruled that the allegations in the petition, "in the operation of" [its railway] and "in the running of its trains on its said railway," embraced more "than the mere act of running the train;" and, as the railway company did not ask any continuance for further preparation for trial, there was no error in receiving evidence that the fire was "caused by the operating of the railway."

3. Negligence — *Prima Facie Evidence.* Under the statutes of this state, in all actions against any railway company for damages by fire caused by the operating of the railroad, proof of the fact that the fire was caused by the operating of the railroad, and the amount of damages thereby, is *prima facie* evidence of negligence on the part of the railroad company.

4. FINDING — *Evidence* — *Burden of Proof.* When the jury finds specially upon all the evidence introduced upon the trial that a railway company failed "to exercise such care and caution that a man of ordinary prudence would have exercised under similar circumstances in burning off the right-of-way," and such finding is supported by evidence, it is immaterial whether the burden of proof of such fact was upon the plaintiff or the defendant.

5. CASE, *Followed.* The case of *A. T. & S. F. Rld. Co. v. Stanford*, 12 Kas. 354, followed.

6. JUDGMENT, *Supported.* The evidence and special findings examined, and *held* to support the judgment rendered.

### Error from Kiowa District Court.

ON the 16th of September, 1890, *Leila V. McBride* commenced her action against *The Chicago, Rock Island & Pacific Railway Company* to recover $1,180 and $100 attorney's fee for damages alleged to have been caused by a fire set out on the 4th day of February of the same year. The petition alleged, among other things:

"That on the 4th day of February, 1889, said defendant controlled and operated a certain railway known as the Chicago, Kansas & Nebraska railway, with the track, cars, locomotives and other appurtenances thereunto belonging, which said railway runs in and through Kiowa county, in this state. . . . That or about the 4th day of February, 1889, said defendant, its agents, servants, and employés, in the operation of and the running of its trains on its said railway, negligently and carelessly permitted its locomotive to emit sparks and fire into the dry grass and weeds along the right-of-way, and the land adjoining thereto, at or near the town of Mullinville, in said Kiowa county, which said sparks and fire ignited and set fire to the prairie grass and weeds along said right-of-way and the adjoining lands; which said fire, so started as aforesaid, spread and burned continuously to and over the plaintiff's premises above described, burning the grass on plaintiff's said lands, and in her said pasture, thereby destroying plaintiff's grazing lands and damaging plaintiff's fence by burning the posts and wire thereof; and burning 50 tons, or thereabouts, of plaintiff's hay in the stack, and burning and killing the said timber and young trees standing and growing along and near the said Kiowa creek."

The railway company filed an answer to the petition con-

taining a general denial.  Trial had before the court with a jury, at the March term for 1890.  The jury returned a verdict in favor of the plaintiff and against the defendant for $678.29, and $100 for attorney's fee.  The jury also made the following special findings of fact:

"1.  Was not said engine, on the day this fire is said to have occurred, managed in a skillful and proper manner? A.  Yes.

"2.  If your answer to interrogatory number one should be 'No,' then please state fully in what particular the said engine was not skillfully or properly managed.  A. ———.

"3.  Could the defendant or its agents, by the exercise of reasonable diligence, at or before the time of permitting said fire to escape, if such was the case, have anticipated the burning of plaintiff's property, at a distance of 10 miles from the railroad track, as likely to occur, and as the natural and probable consequence of permitting said fire to escape?  A. Yes.

"4.  Did not the defendant exercise such care and caution in the use and operation of its engine, at the time said fire is said to have occurred, as a man of ordinary prudence would have exercised under similar circumstances?  A.  No.

"5.  If your answer to interrogatory numbered four should be in the negative, then please state wherein the defendant failed to exercise such care and caution that a man of ordinary prudence would have exercised under similar circumstances.  A.  By not burning off right-of-way; defective engine, and fitted with defective netting in the stack.

"6.  Is it not a fact that the fire and damage to plaintiff was caused by an accident?  A.  No.

"7.  Did the fire escape by reason of the engine being out of repair?  A.  Yes.

"8.  Did the fire escape because of the negligence of the engineer?  A.  No.

"9.  If the jury return a verdict for the plaintiff, they will state specifically what negligence the defendant was guilty of, upon which the jury base their verdict—whether defective engine, condition of right-of-way, or negligence of the defendant's servants in operating the train.  If on account of defective engine, state in what particular it was defective.  If on account of the condition of the right-of-way, state what the defendant did or omitted to do that constitutes the negligence.

If on account of the negligence of the defendant's servants, state what they did or omitted to do constituting the negligence of the defendant. A. By not having right-of-way burned off; also, defective engine; the netting was defective.

"10. Did not the defendant use such care in the construction, maintenance and use of its property — the engine in question — as a man of ordinary prudence would have used under like circumstances? A. No.

"11. If you answer No. 10 in the negative, state what it did or omitted to do that a man of ordinary prudence would have done under like circumstances. A. Would have burned off the right-of-way; would have a perfect spark arrester, and the best modern engine.

"12. Is it probable that this plaintiff's property would have been destroyed by the fire had it not been for the unusual high wind prevailing on that day? A. No; it is not probable, but it is possible.

"13. If an ordinary wind had been blowing on the day plaintiff's property is alleged to have been burned, is it probable that it would have been destroyed? A. No; it is not probable, but it is possible.

"14. If you find for plaintiff, how much damage do you allow per acre for buffalo grass? A. We allow 15 cents per acre.

"15. How much damage do you allow for blue stem per acre? A. Nothing.

"16. How much damage do you allow per ton for hay? A. 80 cents per ton.

"17. How much damage do you allow for trees? A. $240.

"18. If you find for the plaintiff, state fully the amount of such damages, and for what it is allowed. A. $636; timber, $240; grass, $306; hay, $40; fence, $50; interest, $42.29; total, $678.29.

"19. How much do you allow per acre for damages to the plaintiff's land? A. Nothing.

"20. What is the distance south from the railway track to the plowed fire guard? A. About 114 feet.

"21. How far south from the railway track does the right-of-way extend? A. 50 feet.

"22. How far north of the plowed fire guard did the fire start — about what distance? A. About 65 feet."

On the 14th day of March, 1890, the defendant filed its motion for judgment upon the special findings of the jury.

The plaintiff filed her motion to amend her petition to conform to the special findings and verdict of the jury. The motion to amend the petition was granted, and the motion of defendant for judgment upon the special findings was overruled. Thereupon, the defendant filed its motion for a new trial, containing the usual statutory grounds. This motion was also overruled, and judgment rendered in favor of the plaintiff and against the defendant upon the general verdict for $778.29, with costs. The *Railway Company* excepted, and brings the case here.

*M. A. Low*, *W. F. Evans*, and *J. E. Dolman*, for plaintiff in error:

1. The court erred in granting plaintiff's motion to amend her petition to conform to the verdict and special findings of the jury.

The law is clearly established by an abundance of authority, that it is error to permit the introduction of testimony upon an issue not made by the pleadings. *A. T. & S. F. Rld. Co. v. Rice*, 36 Kas. 593; *Newby v. Myers*, 44 id. 477; *Railway Co. v. Fudge*, 39 id. 543; *Miller v. C. M. & St. P. Rly. Co.*, 41 N. W. Rep. (Iowa) 28. It is not true that such an error can be cured by simply amending the petition after verdict, by setting up that issue, to conform to the special findings of the jury.

2. What burden of proof does the statute of 1885 cast upon the defendant in this case?

The statute of 1885 was enacted for the purpose of casting upon a railroad company, whenever a fire escaped from its locomotive, the burden of proving that its engine was not defective or out of repair, and that it was properly operated and properly equipped with the latest improvements for arresting sparks at the time of setting the fire; the reason and the only reason for the statute, and the one upon which this court holds it constitutional, is, that the evidence is peculiarly within the knowledge and possession of the railroad company, and that the plaintiff, in all probability, could not pro-

cure it. *Mo. Pac. Rly. Co. v. Merrill,* 40 Kas. 404; *Mo. Pac. Rly. Co. v. Kincaid,* 29 id. 654; *Bowen v. Railway Co.,* 36 Minn. 522; *Ft. S. W. & W. Rld. Co. v. Karracker,* 46 Kas. 511.

But can it be said that the plaintiff is at any disadvantage with the defendant in procuring evidence as to the condition of the right-of-way? Certainly not. The permitting of dry grass and combustible material to accumulate upon the right-of-way is a fact as much within the knowledge of the plaintiff as of the railroad company. "It comes neither within the letter nor the reason of the statute." *Bowen v. Railway Co.,* 36 Minn. 522. See, also, *Barbier v. Connolly,* 113 U. S. 31; *Mo. Pac. Rly. Co. v. Mackey,* 127 id. 209.

It may be urged that this court has already decided this question in the cases of *Mo. Pac. Rly. Co. v. Cady,* 44 Kas. 633, and *Mo. Pac. Rly. Co. v. Merrill,* 40 id. 405; but is that true? There is no question but that caring for the right-of-way is a part of the operation of a railroad; and that is as far as the Merrill case attempts to go. The syllabus of the case of *Mo. Pac. Rly. Co. v. Cady,* supra, implies that, upon this issue, the burden of proof is upon the plaintiff. The contention of plaintiff in error upon this point is supported by the weight of authority. *Bowen v. Railway Co.,* 36 Minn. 522; *Daly v. C. M. & St. P. Rly. Co.,* 45 N. W. Rep. 611; *G. C. & S. F. Rly. Co. v. Benson,* 69 Tex. 407, and cases cited; *B. & M. Rly. Co. v. Westover,* 4 Neb. 268.

3. The court erred in admitting incompetent evidence upon the condition of defendant's right-of-way.

This court has held in several cases that an allegation of negligence in the operation of the road includes the care of the right-of-way, and any step necessary to the operation of the road; but an allegation of negligence "in the operation and running of its trains" certainly does not include negligence in not caring for the right-of-way, nor any other step aside from the actual running of the train. Under this allegation, the only presumption of negligence in this case which

it was necessary for the defendant to rebut was negligence on the part of employés running the train.

This statute does not do away with the necessary pleadings in the case. It merely shifts the burden of proof, and, unless the allegation is broad enough to cover negligence in allowing combustible material to accumulate upon the right-of-way, it is error to permit the introduction of evidence in that respect, without first giving the defendant an opportunity to prepare for it. *Mo. Pac. Rly. Co. v. Henning*, 48 Kas. 469.

The allegation in plaintiff's petition did not include negligence in permitting combustible material to accumulate upon the right-of-way, and it was therefore error to admit testimony upon the condition of the defendant's right-of-way. *Railway Co. v. Fudge*, 39 Kas. 543; *Newby v. Myers*, 44 id. 477; *Bowen v. Railway Co.*, 36 Minn. 522; *G. C. & S. F. Rly. Co. v. Benson*, 69 Tex. 407, and cases cited; *B. & M. Rly. Co. v. Westover*, 4 Neb. 268; *A. T. & S. F. Rld. Co. v. Rice*, 36 Kas. 593; *Miller v. C. M. & S. P. Rly. Co.*, 41 N. W. Rep. (Iowa) 28.

4. The jury found that the engine in question was properly managed, and that there was no negligence on the part of the engineer.

Upon the second finding, that the netting of the engine was defective, there is not one syllable of testimony to support it, unless it can be said that the jury would have a right to infer that the netting was defective from the fact that there is some testimony which, in some mysterious manner, crept into this case, that one other fire was discovered shortly after this train passed a certain point east of where the fire in question started. The undisputed fact that this engine ran all the way from Pratt to Liberal, in a high wind, everything dry as tinder, and only set two fires, is sufficient evidence in itself to prove the netting in perfect condition and rebut any other presumption the jury may have indulged in. No matter how perfect an engine may be, it is liable to throw sparks under certain conditions. Now, what is the testimony respecting the actual condition of this netting?

Upon that point the engineer, T. E. Skelley, testified that the engine was equipped with all the modern improvements for arresting sparks, and all in good condition.   The mere fact that there was grass one foot inside of the outside line of its right-of-way does not constitute negligence, and it has been so held by this court.   The law does not require the railway company to keep its right-of-way absolutely free from grass; all that the law requires is, that it shall use ordinary care and caution to prevent an accumulation of dry grass and weeds thereon.   *K. P. Rly. Co. v. Butts*, 7 Kas. 308; *A. T. & S. F. Rld. Co. v. Dennis*, 38 id. 424; *White v. Mo. Pac. Rly. Co.*, 31 id. 280; *B. & M. Rly. Co. v. Westover*, 4 Neb. 268; *Ill. Cent. Rly. Co. v. Mills*, 42 Ill. 407; *G. C. & S. F. Rly. Co. v. Benson*, 69 Tex. 407, and cases cited; *O. & M. Rly. Co. v. Shamfelt*, 47 Ill. 497; *Borland v. C. M. & St. P. Rly. Co.*, 42 N. W. Rep. 590.

5. The court erred in overruling defendant's motion for judgment upon the special findings of the jury.

The only allegation of negligence in plaintiff's petition was carelessness on the part of its servants in operating its train and locomotive.   Upon this issue the jury found in favor of the defendant.

The finding that the netting was defective, and that defendant was negligent in failing to burn its right-of-way, were findings wholly unsupported by any evidence, and upon issues not made by the pleadings, and are, therefore, a nullity.   *Newby v. Myers*, 44 Kas. 477; *C. & St. P. Rly. Co. v. Burger*, 24 N. E. Rep. 981.

We suppose it is elementary law that

"The damages for which a party is and upon  principle ought to be liable are those which are the natural  or necessary consequences of his wrongful act.   But where some other agency intervenes and extends the injurious effects of the wrongful act beyond the range of its natural or necessary consequences, and beyond what could ordinarily have been anticipated, the party originally at fault is not responsible for such additional injurious effect."

See *Penn. Rly. Co. v. Whitlock*, 99 Ind. 16.   See, also, *Milwaukee &c. Rly. Co. v. Kellogg*, 94 U. S. 469; *Fent v. Railway Co.*, 59 Ill. 349; *Railway Co. v. Muthersbaugh*, 71 id. 572; *Pielke v. C. M. & St. P. Rly. Co.*, 41 N. W. Rep. 669; *Penn. Rly. Co. v. Hope*, 80 Pa. St. 373; *Penn. Rly. Co. v. Kerr*, 62 id. 353.

In the case at bar, the jury found that the result under ordinary circumstances was not probable. It could not, therefore, have been foreseen as the probable result of the acts of the defendant. The jury found that the result was a mere possibility. If the defendant was bound in law to anticipate all the possible consequences of its acts, then the motion for judgment on findings Nos. 12 and 13 should have been overruled; otherwise, it should have been sustained. We submit that the doctrine here contended for was laid down by this court in the case of *A. T. & S. F. Rld. Co v. Bales*, 16 Kas. 252.   See, also, *C. K. & N. Rly. Co. v. Hotz*, 47 Kas. 627; *Hoag v. L. S. & M. S. Rly. Co.*, 85 Pa. St. 293; *Seale v. G. C. & S. F. Rld. Co.*, 65 Tex. 274; *Henry v. So. Pac. Rld. Co.*, 50 Cal. 176, 183; Cooley, Torts, 69; *Daggett v. Richmond*, 78 N. C. 305; *Sharp v. Powell*, L. R. 7 C. P. 253.

6. The court erred in refusing to give instruction No. 1, as requested by the defendant. See *Spaulding v. C. & N. W. Rly. Co.*, 33 Wis. 582; *Volkman v. Railway Co.*, 37 N.W. Rep. 731; *Railway Co. v. Benson*, 69 Tex. 407; *Daly v. C. M. & St. P. Rly. Co.*, 43 Minn. 319; *Ky. Cent. Rly. Co. v. Talbot*, 78 Ky. 621; *C. St. L. & N. O. Rly. Co. v. Packwood*, 7 Am. & Eng. Rld. Cases, (Miss.) 584; *St. L. & S. F. Rly. Co. v. Basham*, 1 S. W. Rep. 555; *Durham v. Railroad Co.*, 82 N. C. 352; *M. & L. Rly. Co. v. Shoecraft*, 13 S. W. Rep. 422; *L. R. & F. S. Rly. Co. v. Turner*, 41 Ark. 161; *Koontz v. Oregon Rly. Co.*, 20 Ore. 3.

It was error to refuse instruction No. 3, as requested by the defendant. See *A. T. S. F. Rld. Co. v. Irwin*, 35 Kas. 286; *Newby v. Myers*, 44 id. 477; *Railway Co. v. Fudge*, 39 id. 543; *Miller v. C. M. & St. P. Rly. Co.*, 41 N. W. Rep. 28; *Bowen v. Railway Co.*, 36 Minn. 522.

It was error to refuse to give instruction No. 4, as requseted by the defendant. See *A. T. & S. F. Rld. Co. v. Bales,* 16 Kas. 252; *Pielke v. C. M. & St. P. Rly. Co.,* 41 N. W. Rep. 669; *Fent v. Toledo &c. Rly. Co.,* 59 Ill. 349; *Milwaukee &c. Rly. Co. v. Kellogg,* 94 U. S. 469; *Hoag v. L. S. & M. S. Rly. Co.,* 85 Pa. St. 293; *Penn. Rly. Co. v. Hope,* 80 id. 373; *Railway Co. v. Muthersbaugh,* 71 Ill. 572.

The court erred in refusing to give instruction No. 7, as requested by the defendant. See *Bowen v. Railway Co.,* 36 Minn. 522; *Miller v. C. M. & St. P. Rly. Co.,* 41 N. W. Rep. 28; *Railway Co. v. Fudge,* 39 Kas. 543; *Mo. Pac. Rly. Co. v. Henning,* 48 id. 469; *C. St. L. & P. Rly. Co. v. Bunger,* 24 N. E. Rep. 981; *A. T. & S. F. Rld. Co. v. Irwin,* 35 Kas. 286; *K. P. Rly. Co. v. Dunmeyer,* 19 id. 539; *A. T. & S. F. Rld. Co. v. Rice,* 36 id. 593.

7. The court erred in instructing the jury, as set out in its instruction No. 13. This instruction was erroneous and misleading, for the reason that the petition did not allege negligence in "operating said railway." No such term is used in the petition. The only negligence alleged was "in operating its trains on its said railway." There is a very great difference between the two allegations, which we think has already been clearly pointed out.

*J. W. Davis,* for defendant in error:

1. The amendment complained of in plaintiff in error's first assignment was in fact an amendment to conform to the facts proved. It was made after trial, and after verdict was rendered, and was within the discretion of the court. *Stith v. Fullinwider,* 40 Kas. 73. Admitting, however, that this was, as the plaintiff in error contends, an amendment "to conform to the verdict and special findings of the jury," the rights of defendant were not in any way prejudiced by it. How could any amendment of the pleadings after trial, and after verdict was rendered, affect the rights of either party in that trial? It was a mere irregularity, and cuts no figure in the case.

2. The question raised as to the burden of proof is purely a question of pleading. The numerous decisions of that question by this court ought to be considered a final adjudication of it. Allegations of negligence are unnecessary. *Ft. S. W. & W. Rld. Co. v. Tubbs,* 47 Kas. 630; *St. L. Ft. S. & W. Rly. Co. v. Snaveley,* 47 id. 637; *Ft. S. W. & W. Rld. v. Karracker,* 46 id. 511.

Suppose the defendant offer no testimony to rebut the plaintiff's *prima facie* case? The plaintiff would recover judgment. *Small v. C. R. I. & P. Rly. Co.,* 50 Iowa, 363. Under what rule of pleading, then, can it be said that plaintiff should go further and plead facts which he may not be called on to prove? The cases of *Mo. Pac. Rly. Co. v. Merrill,* 40 Kas. 405, *Mo. Pac. Rly. Co. v. Cady,* 44 id. 633, and the cases cited above, are decisive of this and the other questions presented in this assignment.

3. In its third assignment of error, plaintiff in error claims that the district court erred in admitting evidence as to the condition of defendant's right-of-way, on the ground that no issue of negligence in this respect was made by the pleadings. This, again, is a question of pleading. The allegations of plaintiff's petition, "in the operation of [its said railway]" and "in the running of its trains on its said railway," cover more than the mere act of running the train. They extend back to and include the act of building the locomotive in question; its equipment with the most approved, modern and practicable appliances for arresting sparks; keeping the engine and its appliances in repair, and the proper care of its right-of-way. *Mo. Pac. Rly. Co. v. Merrill,* supra; *Mo. Pac. Rly. Co. v. Cady,* supra; *Railway Co. v. Snaveley,* supra; *Railroad Co. v. Tubbs,* supra; *Webb v. R. W. & O. Rld. Co.,* 49 N. Y. 420.

In reply, therefore, to the claim of the plaintiff in error, as stated in its third assignment of error, we say: 1. That the issue of negligence was made by the pleadings. 2. That all of the testimony offered by plaintiff on this point (the condition of defendant's right-of-way) was in rebuttal of defend-

ant's case. The plaintiff offered no testimony on this point to make her *prima facie* case. 3. But we again urge that, since the plaintiff is not required, under this statute, to prove negligence to make a *prima facie* case, he need not allege negligence. The statute informs the defendant that its negligence will be presumed if the plaintiff shall establish the fact that the fire was caused by the operation of the railroad. The defendant knows this before going to trial as well as if it had been informed of it by the pleadings. Again, the plaintiff may not know what the specific act of negligence was. The only thing he may know may be that the fire sprang up immediately on the passing of the train. Proof of this fact is sufficient, under our statute, to raise the presumption of negligence. *A. T. & S. F. Rld. Co. v. Gibson,* 42 Kas. 34; *Railway Co. v. Merrill,* supra; *Railway Co. v. Snaveley,* supra.

4. The evidence of witnesses McKee, Helmich, Henderson, Mitchell, Kuntz and Burnett was of itself sufficient to support the findings of a defective engine, a defective netting, or mismanagement of the train, or all three of them.

*Mo. Pac. Rly. Co. v. Kincaid,* 29 Kas. 654; *A. T. & S. F. Rld. Co. v. Stanford,* 12 id. 354; *St. J. & D. C. Rld. Co. v. Chase,* 11 id. 47; *Railroad Co. v. Karracker,* supra; *Babcock v. C. & N. W. Rly. Co.,* 62 Iowa, 593; *Gandy v. C. & N. W. Rly. Co.,* 30 id. 420.

The defendant willfully disregarded the dangerous conditions by which it was surrounded, and, in so doing, it was not merely negligent, but culpably negligent.

*Rapid Transit Rly. Co. v. Fox,* 41 Kas. 715; *St. L. Ft. S. & W. Rld. Co. v. Irwin,* 37 id. 701; *Ill. Cent. Rld. Co. v. Welch,* 52 Ill. 183; *C. & I. Rld. Co. v. Russell,* 91 id. 298. See, also, *Babcock v. C. & N. W. Rly. Co.,* 62 Iowa, 593; *Gandy v. C. & N. W. Rly. Co.,* 30 id. 420.

5. The plaintiff in error claims that special findings Nos. 12 and 13 are inconsistent with and contrary to the general verdict, and that the damage is too remote. This is a palpable error. If these two findings stood alone, if there were no other findings on the same point, there might be some

ground for this claim. It should be observed that these findings are hypothetical, and are simply to the effect that, under certain assumed conditions, the result might not have happened, and that is as far as they go. But the jury had previously found that, under existing circumstances, the result was the natural and probable consequence of permitting the fire to escape, and that it could have been anticipated as likely to occur. See *Milwaukee &c. Rly. Co. v. Kellogg*, 94 U. S. 469.

The jury found that the defendant could, with reasonable diligence, have anticipated the burning as the natural and probable consequence of setting the fire. Therefore the damages are not remote. *Railroad Co. v. Stanford*, supra; *Rapid Transit Rly. Co. v. Fox*, supra; *Railroad Co. v. Walz*, 40 Kas. 433; *Railway Co. v. Whipple*, 39 id. 531; *Lehigh V. Rld. Co. v. McKeen*, 90 Pa. St. 122; *White v. Colo. Cent. Rld. Co.*, 5 Dill. 429, and cases cited. See, also, *Fent v. Railway Co.*, 59 Ill. 349; *Milwaukee &c. Rly. Co. v. Kellogg*, 94 U. S. 469; *Penn. Rly. Co. v. Hope*, 80 Pa. St. 373; *Hoag v. Lake Shore Rly. Co.*, 85 id. 293; *Kellogg v. Railway Co.*, 26 Wis. 223, 258, *et seq.*, and cases cited.

Whether the defendant could have anticipated, under existing circumstances, the consequences of its negligent act, was a question for the jury. *Railway Co. v. Kellogg*, supra; *Railway Co. v. Hope*, supra; *Kellogg v. Railway Co.*, supra; *Fent v. Railway Co.*, supra.

Although a strong wind may be blowing at the time of the fire in the direction of plaintiff's property, that circumstance is not sufficient to render the damages remote. *Railroad Co. v. Stanford*, supra; *Railroad Co. v. Bales*, 16 Kas. 252; *Kellogg v. C. & N. W. Rly. Co.*, 26 Wis. 254, *et seq.; Webb v. R. W. & O. Rld. Co.*, supra; *Insurance Co. v. Tweed*, 7 Wall. 44, 52; *Kuhn v. Jewett*, 33 N. J. Eq. 647, and cases cited; *Oil Creek & A. Rly. Co. v. Keighron*, 74 Pa. St. 316.

The following cases cited and relied on by plaintiff in error strongly affirm this doctrine: *Fent v. Railway Co.*, supra; *Railway Co. v. Kellogg*, supra; *Railway Co. v. Hope*, supra;

*Hoag v. Railway Co.*, supra; *Railroad Co. v. Bales*, supra; *Seale v. Railroad Co.*, 65 Tex. 279.

As showing what elements go to make up the negligence of a defendant in cases of this kind, see *Webb v. R. W. & O. Rld. Co.*, 49 N. Y. 420; *Kellogg v. C. & N. W. Rly. Co.*, 26 Wis. 223; *Williams v. Vanderbilt*, 28 N. Y. 217; *Railroad Co. v. Eaton*, 94 Ind. 474; *Railway Co. v. Salmon*, 39 N. J. Law, 299; *Brown v. Railroad Co.*, 54 Wis. 342; *Drake v. Kiely*, 93 Pa. St. 492; *Lee v. Railroad Co.*, 12 R. I. 386; *Insurance Co. v. Trans. Co.*, 12 Wall. 199.

The presumption is in favor of the judgment of the district court. *McCoy v. Whitehouse*, 30 Kas. 433, 438. If possible to do so, the findings will be construed so as to sustain the verdict rather than to overturn it. *German Ins. Co. v. Smelker*, 38 Kas. 285; *Solomon Rld. Co. v. Jones*, 34 id. 443; *Railway Co. v. Ritz*, 33 id. 404; *Jackson v. Linnington*, 47 id. 396; *U. P. Rly. Co. v. Fray*, 43 id. 750. See, also, *Railroad Co. v. Barton*, 61 Ind. 293; *Railroad Co. v. Stout*, 53 id. 143; *Ridgway v. Dearinger*, 42 id. 157; *B. & O. Rld. Co. v. Rowan*, 104 id. 88; *McClure v. McClure*, 74 id. 108.

The test of the railroad company's liability in the Bales case, *supra*, was declared to be contained in the jury's answer to three certain questions. In the case at bar, the first and third of these questions were answered in the affirmative, and the second in the negative. Under the authority of that case, therefore, there can be no other conclusion than that the defendant must be held liable in this.

6. As to the instructions: There was no error in refusing to give instruction No. 1, asked by defendant. The sufficiency of defendant's rebutting evidence was a question for the jury. *Babcock v. Railway Co.*, supra.

There was no error in refusing instruction No. 3, asked by defendant. This instruction was, besides, fully covered by instructions Nos. 8, 10, 11, 12, 13, and 15.

There was no error in refusing instruction No. 4, asked by defendant. The question of proximity was a question for the jury to determine, (*Milwaukee &c. Rly. Co. v. Kellogg*, supra,)

and the jury found that, under the circumstances as they existed and were known to defendant, the damage was the probable consequence of the defendant's act.

It will appear from an inspection of subdivision 3 of this brief and the authorities there cited, that the court committed no error in refusing to give instruction No. 7, asked by defendant, nor in giving instruction No. 13.

The evidence in this case was so clear and convincing as to leave no room for controversy about the origin of the fire. There is likewise no controversy about the plaintiff's loss, nor the amount of the damages found.

The opinion of the court was delivered by

HORTON, C. J.: It is insisted that the trial court erred in granting the motion of plaintiff below to amend her petition to conform to the verdict and special findings of the jury. This involves also the question whether the court erred in admitting evidence to prove that the locomotive engine was defective, and the condition of the right-of-way; and further, concerns the rulings upon the special findings of the jury, and the instructions given and refused. The argument is, that the trial court permitted negligence to be proved upon issues not made by the pleadings, which the railway company was unprepared to meet. If this were true, prejudicial error would exist. The petition reads as follows:

"    .  .  .   Said defendant, its agents, servants, and employes, in the operation of and in the running of its trains on its said railway, negligently and carelessly permitted its locomotive to emit sparks and fire into the dry grass and weeds along the right-of-way, and the land adjoining thereto, at or near the town of Mullinville, in said Kiowa county, which said sparks and fire ignited and set fire to the prairie grass and weeds along said right-of-way and the adjoining lands; which said fire, so started as aforesaid, spread and burned continuously to and over plaintiff's premises above described."

The trial court, in its construction of the petition, ruled that "the allegations in the operation of [ its said railway ]"

and "in the running of its trains on its said railway" covered more than the mere "act of running the train," and, therefore, that it was competent for the plaintiff below to show that engine No. 178, on train No. 23, going west through Mullinville, from Pratt to Liberal, in the forenoon of February 4, 1889, was defective, and that dry grass and other combustible material were permitted to accumulate on the right-of-way. The plaintiff below offered evidence to establish the fact that the fire complained of was caused by the operation of the railroad, and the amount of her damages; that is, made a *prima facie* case under chapter 155, Laws of 1885. The railway company offered evidence tending to show that the engineer of train No. 23 was not careless or negligent; that the engine and train were managed in a skillful and proper manner, and also that engine No. 178 was not defective, but in a good contion, and that the right-of-way had been recently burned off, and was free from dried grass or weeds. The plaintiff below, in rebuttal, was permitted to show that the right-of-way had not been burned off recently, and that dry grass and weeds had accumulated thereon.

3. Negligence—
prima facie
evidence.

The railroad company offered evidence upon all the issues of the petition, as construed by the trial court, and that included the issue whether the fire was "caused by the operating of the railroad." (*Railway Co. v. Merrill*, 40 Kas. 404; *Railway Co. v. Cady*, 44 id. 633.) No motion at any time was made for a continuance of the cause, and it cannot be said that there is anything in the record tending to show the railroad company was misled or surprised by the issues actually tried. If the trial court had ruled that the only negligence charged in the petition was "in the operation and running of its train," the railroad company would have had good cause of complaint that other issues were proved than those alleged; but the construction given by the trial court to the petition, and the evidence received upon the trial for and against its allegations, show that the issues concerning the engine and the

2. Railroad com-
pany—dam-
ages caused
by fire—
evidence.

right-of-way were fully and fairly tried. Under the construction given to the petition, the amendments
after the verdict were unnecessary, and added nothing to the strength of plaintiff's case. At most, the permission to amend was a mere irregularity. Under the petition, the general verdict, and the special findings of the jury that the fire was not caused by accident, the judgment has support, and the court committed no error in receiving the evidence objected to.

*1. Petition— amendment to meet proof.*

*6. Judgment, supported.*

It is next insisted that the burden of proof was cast on the company concerning the combustible material which it was alleged was upon the right-of-way. It appears from the evidence that on the 4th of February, 1889, the train of the railway company, going west, passed through Mullinville about 10 o'clock in the forenoon, and about a mile and a half after the train left the depot, a fire sprung up along the railway, on the south, and went in a southeastern direction as far as the Cimarron, in the Indian Territory. W. B. Burnett, who was at the Rock Island depot at Mullinville with the mail on the 4th of February, at the time the train left for the west, testified he was employed by the railway company to fight the fire, and that he followed it about 12 miles south.

The petition alleged that the sparks and fire thrown from the engine "ignited and set fire to the prairie grass and weeds along the right-of-way and the adjoining lands." The lands or ranch of the plaintiff below consisted of over a thousand acres, a part of which were burnt over, and are situate 10 miles or more south of Mullinville. The right-of-way, where it is alleged there was a large accumulation of dry grass and weeds, was under the direction and care of the employés of the railway company. The caring of the right-of-way is within the control of the company, and the plaintiff below, whose property was consumed by fire, had less opportunity in this case to learn the true condition of the right-of-way than others. It is true that the right-of-way was open to public inspection, the same as the land or fields of other persons, but the pre-

sumption of negligence concerning the caring for the right-of-way arising from the statute, if any, does not seem to have affected the verdict, because there was evidence from both plaintiff and defendant upon the condition of the right-of-way before the fire, and the jury specially found that the railway company failed to "exercise such care and caution that a man of ordinary prudence would have exercised under similar circumstances in not burning off the right-of-way." They also specially found as follows: "Q. State what the defendant's servants did or omitted to do constituting the negligence of the defendant. A. By not having the right-of-way burned off." Therefore it is unnecessary in this case, on account of the facts found, to discuss the question whether, under the statute, the presumption of negligence applies only to defects in the engine and negligence of employés in operating it. But see *Railway Co. v. Merrill*, 40 Kas. 404; *Railway Co. v. Cady*, 44 id. 633; *Railroad Co. v. Westover*, 4 Neb. 269.

4. Finding—
evidence—
burden of
proof.

It is next insisted that the findings of the jury that the engine was defective and that the fire caught within the right-of-way are wholly unsupported by any evidence. There was very much evidence offered tending to show that the engine was well equipped with all the latest modern improvements for arresting sparks, that they were all in good repair, and that it is not possible to entirely prevent the escape of sparks from an engine, and also that the fire started from 110 to 120 feet from the track. While possibly the conclusion of the trial court may not have been the same we would have arrived at from the evidence as disclosed in the record, yet it cannot be said, we think, that the findings are without support. Mr. Kuntz, who lived near the railroad, had frequently seen the engine set other fires previously. Wallace Burnett saw the engine throw sparks and fire about a week previous to the fire complained of. It was proved that the engine had caused another fire on the same day a few miles east of the fire complained of. James B. Forbes testified that he had been a locomotive engineer for four years, and

that he was acquainted with the construction and different parts of a locomotive or engine. He also testified:

"Q. You may tell the jury whether an engine properly equipped with the most approved appliances will throw sparks sufficient to ignite combustible material along the track. A. Not when I run. I don't think I ever set fire to anything, either with diamond stack or straight shot.

"Q. If an engine is in proper condition and properly handled, and if the netting is perfect, the smokestack in good condition, will such an engine throw sparks sufficient to ignite combustible material? A. I never knew them to.

"Q. Then, if an engine should throw sparks any great distance, and these sparks were of sufficient size to live and ignite combustible material, would n't you say the engine was either out of repair or that it was mismanaged in some way? A. I should say that it was out of repair."

Several witnesses called for the plaintiff below testified that the fire started within the right-of-way. Two witnesses testified that it started within 10 to 15 feet of the track. J. B. Kuntz testified that it started about 40 feet from the track; that he went down to the track for the purpose of seeing whether it had caught on the right-of-way; that he stepped the distance from the burned ground to the track. J. H. Sanders testified he saw the fire burn a part of the McBride ranch on the 4th of February; that he was coming over the north of the ranch which the fire had burned; that he followed the fire back to the railroad; that the fire had burned from south of the Rock Island railroad. (*Railroad Co. v. Stanford*, 12 Kas. 370; *Railroad Co. v. Bales*, 16 id. 252.)

The jury also found, in answer to special interrogatories, as follows:

"Ques. 12. Is it probable that this plaintiff's property would have been destroyed, had it not been for the unusual high wind prevailing at the time? Ans. No; it is not probable, but it is possible.

"Q. 13. If an ordinary wind had been blowing on the day plaintiff's property is alleged to have been burned, is it probable that it would have been destroyed? A. No, it is not probable, but possible."

As a high wind was blowing at the time the train passed through Mullinville west, it is urged that the injury complained of was too remote. It is said that the "result was a mere possibility." The wind was blowing at the time the fire was set, the flames spread rapidly from the place where it started over the prairie until it reached the property destroyed, yet it burned without intermission. The plaintiff's property would not have been destroyed except for the fire which the railway company permitted to escape. Under the findings of the jury, the railway company was negligent in permitting the fire to escape, and the company, by the exercise of reasonable diligence before the fire, knowing that the weather was very dry and windy, could have anticipated that sparks escaping from an engine would have set fire to the dry grass and weeds along the right-of-way and adjoining lands, and that the grass and weeds thus set on fire would likely burn without intermission over the prairie to a great distance. In the Stanford case, 12 Kas. 354, the wind was very strong, and the fire from the engine did not fall upon the plaintiff's property, but spread and finally reached his property, about four miles distant from the railroad track, and there did the damage for which the recovery was allowed. In that case, (p. 377,) VALENTINE, J., speaking for the court, observed:

"A wrongdoer is not merely responsible for the first result of his wrongful act, but he is also responsible for every succeeding injurious result which could have been foreseen, by the exercise of reasonable diligence, as the reasonable, natural and probable consequence of his wrongful act. He is responsible for any number of injurious results consecutively produced by impulsion, one upon another, and constituting distinct and separate events, provided they all necessarily follow from the first wrongful cause. Any number of causes and effects may intervene between the first wrongful cause and the final injurious consequence; and if they are such as might, with reasonable diligence, have been foreseen, the last result, as well as the first, and every intermediate result, is to be considered in law as the proximate result of the first wrongful cause."

In *Huyett v. Railroad Co.*, 23 Pa. St. 373, the weather was

very dry and windy, and the sparks flew from the engine to a great distance, setting fire to several fields and fences near the same time and place, and it was left for the jury to decide whether there was sufficient evidence of carelessness. In *Kellogg v. Railroad Co.*, 26 Wis. 223, the fire was set out in a drought and high wind. In that case the damages were held not to be remote, and the verdict was permitted to stand. In this case, at the time of the fire a high wind was prevailing, but there was no "perfect gale, no hurricane, no cyclone." The wind did not arise suddenly after the sparks set the grass and weeds on fire.

"In the present case there was but one burning, one continuous conflagration, from the time the fire was set on the railroad until the plaintiff's property was destroyed. The combustible material extended, and the ground was burned over, all the way from the railroad to the plaintiff's property; and the fire, driven by the wind, was carried to his property in that manner. There was no distinct or separate setting fire to or burning of the stacks or buildings, and then a communication of the fire by sparks through the air from one stack or building to another. There was no succession of events, but only one event." (*Kellogg v. Railway Co.*, supra.)

It cannot be said that the blowing of the wind at the time of the fire must be regarded as extraordinary. In *Kuhn v. Jewett*, 33 N. J. Eq. 647, it appeared that a railway train laden with petroleum was wrecked through the negligence of the defendant, and the oil escaping took fire, ran down into a stream of water, and was borne down in a blaze against the plaintiff's stable some distance below, in consequence of which the stable was destroyed. The defendant was held liable, and the vice chancellor said:

"There can be no doubt, I think, if in this instance the flames of the burning oil had been carried by the wind directly from the point of collision to the petitioner's building, and it had thus been set on fire and destroyed, that the injury would, in judgment of law, have been the natural and direct or proximate result of the collision. So, too, if the burning oil had descended from the point where it was first ignited by the mere force of its own gravity upon the peti-

tioner's building and destroyed it, the connection between cause and effect would have been so close and direct that the defendant's liability could not have been successfully questioned. So, also, if the fire had been carried from the place of its origin to the petitioner's building by a train of combustible matter deposited in its track by the operation of the laws of nature, the petitioner's injury, I think, it could not have been doubted, would have been esteemed the direct result of the defendant's negligence. These principles must rule this case. Their application is obvious, for, although water is almost universally used as a means to extinguish fire, and it seems, at first blush, absurd to say that it can be used for the purpose of extending it, yet it is true, as a matter of fact, that as an agency for the transmission of burning oil, it is just as certain and effectual in its operation as the wind in carrying flame, or a spark, or combustible matter, in spreading a fire. In keeping up the continuity between cause and effect, it may be just as certain and effectual in its operation as any other material force."

If it had not been for the high wind prevailing, the jury found that it was not probable that plaintiff's property would have been destroyed; that is, that it is not probable the fire, if not driven by the wind, would have spread so far. But, within the Stanford case, "the last result," the 5. Case, followed. burning of the plaintiff's property, is to be considered "as a proximate result of the first wrongful cause." In the Kuhn case, the flames of the burning oil were carried by water. It was insisted by the defendant in that case that this result could not have been foreseen, yet the injury was held to have been the proximate result of the collision wrecking the railway train and causing the oil escaping to take fire, although after taking fire the burning oil was carried to the property which it destroyed by a stream of water.

It is unnecessary to make further comments upon the alleged errors as presented. The judgment will be affirmed.

All the Justices concurring.