ESTHER HUTCHINSON, an Infant, by her Guardian *vs.* ST. PAUL, MINNEAPOLIS · & MANITOBA RAILWAY COMPANY.

October 13, 1884.

**Railway—Accident at Street-Crossing — Contributory Negligence.—** In an action to recover damages for injuries from a collision at a railway crossing with the wagon in which plaintiff was riding, her evidence tended to show that the team was driven with care, and that plaintiff and the driver were watching the road, and looking and listening for indications of danger as they approached the crossing; that they heard no signal, and had no warning of the approach of an engine from the west, but were unexpectedly overtaken by a switch-engine from that direction, running backwards down grade at a high rate of speed, with steam shut off, and without signals of its approach, which they did not discover till too late to avoid a collision. They were going east, the railroad being on their left and approaching the street at a sharp angle, and above there was a cut which partially obscured the vision, terminating about 200 feet from the crossing. The evidence also shows that they had previously looked several times up the road in that direction, the last time when at a point from 50 to 70 feet from the crossing, and in the interval of about 10 seconds they were listening for signals or indications of a coming train, their attention being also arrested by the presence of another switch-engine standing below the crossing apparently ready to move. *Held*, that whether the plaintiff was in the exercise of that degree of care which persons of ordinary prudence and intelligence would exercise in a similar situation depends upon the consideration of a variety of circumstances and inferences of fact, which were proper for the judgment of a jury, and that the case was properly submitted to them.

Action to recover damages for personal injuries, brought in the district court for Otter Tail county. At the trial before *Collins,* J., plaintiff had a verdict for $8,272.55. The defendant appeals from an order refusing a new trial.

*Bigelow, Flandrau & Squires, R. B. Galusha* and *J. Kling,* for appellant.

*Brown & Houpt* and *Tyler & Lewis,* for respondent.

VANDERBURGH, J. That there is abundant evidence in the case tending to show negligence on the part of the defendant's servants in running the engine which came into collision with the vehicle in which

plaintiff was riding, and caused the injury complained of, is not questioned.   The defendant's chief contention is that the evidence also conclusively establishes contributory negligence on the part of the plaintiff.   Whether the case should have been withdrawn from the jury for this cause, is, therefore, the principal question for our consideration.

The accident occurred at the intersection of Summit avenue with the defendant's railroad track, in the city of Fergus Falls.   The road runs south-easterly through that portion of the city, on a descending grade of 35 to 37 feet per mile, having a single track, and crossing Union avenue, Court street, Summit avenue, and Mill street diagonally, substantially as shown by the annexed diagram, and a portion of the way also running through a cut, which extends above Union avenue, where the track is bridged, down to within 50 feet of the centre of Court street, and about 200 feet from the place of the accident. Above Court street the ground rises and the cut deepens, the banks rising in some places to a height of 20 feet above the track.   The wagon was driven by one Shuster, who had been employed to convey plaintiff, a young girl of 15 years, into the city.   They entered the city by way of Court street, going north directly towards the railroad, of the line of which, except as obscured by the banks of the cut, they had an extended view; and the evidence shows that while approaching Summit avenue, which is crossed by Court street, they both looked and listened for the cars from the west.   Turning east into Summit avenue, at about 100 feet from the crossing, they repeated the same precautions, and also, after advancing from 30 to 50 feet further towards the crossing,—the railroad being on their left, and intersecting the street at a sharp angle,—they again turned and looked up the road as far as Union avenue bridge, where they saw school children on the bridge, but neither saw nor heard any indications of cars or engine.   They had previously observed a switch-engine with steam up standing on the track below Mill street, which is parallel to and next east of Court street.   It was, in fact, on a side track, but this they did not then know.   Subsequent accurate measurements show that, at a distance of 105 feet from the crossing, the smoke-stack and cab of an engine could have been seen a distance of 320 feet, and 900

feet at a point 70 feet from the crossing.   The parties did not again
look westerly up the track (though listening for signals) till the horses.

A—Point of accident.
C—Point 50 feet west from A,
    on Summit avenue.
D—Court street crossing.
E—Union avenue bridge.
F—Mill street crossing.
G—Side-track below Mill street.
H—Commencement of cut.

reached the platform of the crossing,—a period of about 10 seconds,—
when plaintiff suddenly discovered an engine from that direction mov-
ing rapidly upon them, without warning or noise indicating its ap-

proach, and too late to prevent a collision. They testify that they had in the mean time been watching the engine in sight below them, and plaintiff's evidence also shows that the engine which caused the accident was also a switch-engine; that it was running backwards down grade, with steam shut off, at from 20 to 25 miles an hour; and that the men in charge of it neglected to give signals of any kind of its approach, or to keep a lookout for danger at the crossings.

At whatever rate of speed it may have been moving, the engine was, doubtless, somewhere in the cut when the plaintiff last looked in that direction before reaching the crossing. But plaintiff and Shuster both deny that they saw it, and insist that they looked that way and continually listened for indications of danger. They were not bound to exercise extreme diligence, but such diligence as persons of common prudence and intelligence would exercise under the circumstances, and they were not required to measure time and distance with exactness as they approached the crossing; and it does not necessarily follow because, upon a subsequent measurement by an experienced engineer, it is discovered that an engine could be seen a given distance at different points in the street as they neared the track, that the plaintiff was negligent in not observing it under all the circumstances. *Massoth* v. *D. & H. C. Co.,* 64 N. Y. 530.

The evidence tends to show that the plaintiff and the driver were constantly mindful that they were approaching a place of danger, and were regulating their conduct with reference to that fact, and, under the circumstances, it was a fair inference of fact for the jury that they were surprised by the sudden appearance of the engine, and that, after their observation in that direction, they had no reason to expect the presence of another switch-engine at that place, without signals, which, if duly made, considering the proximity of the road on their left, might have been heard in time to have prevented the accident. In considering what ordinary prudence would require of the plaintiff, under such circumstances, regard must be had to the nature of the danger to be apprehended, and the reasonable probability of incurring it, and also the natural presumption that the defendant would discharge its duty, and act with due care. She could not be charged with negligence in not anticipating some particular

negligent act of the defendant, or, as in this instance, if her evidence is true, its culpable negligence in so running an engine at a high rate of speed, without warning, in a city where crossings are numerous and much travelled. Nevertheless, she would not, on this account, be entitled to omit the reasonable precautions dictated by prudence, in approaching a known place of danger. It is apparent, however, that the question of plaintiff's contributory negligence in the premises depends upon the consideration of a variety of circumstances, and upon inferences of fact which render the case one proper for the judgment. of a jury; and for substantially the same reasons that controlled the decision of this court in *Loucks* v. *Chic., M. & St. P. Ry. Co.*, 31 Minn. 526, we think this case was properly submitted to the jury. *French* v. *Taunton Branch Railroad,* 116 Mass. 540; *Chaffee* v. *Boston & L. R. Co.*, 104 Mass. 108; *Stackus* v. *N. Y. C. & H. R. R. Co.*, 79 N. Y. 464; *Ochsenbein* v. *Shapley,* 85 N. Y. 214; *Baldwin* v. *St. Louis, etc., R. Co.*, 18 N. W. Rep. (Iowa,) 884; *Butler* v. *Mil. & St. Paul Ry. Co.*, 28 Wis. 487, 504; *Gaynor* v. *Old Colony & N. Ry. Co.*, 100 Mass. 208.

Exceptions were taken by defendant's counsel to certain instructions given by the court, to the effect that the failure to ring the bell or sound the whistle, and to keep a lookout for the crossings, if so the jury found the fact to be, was evidence of negligence, as it also was to run the engine at a dangerous rate of speed, under the circumstances. These exceptions were properly overruled, both because such evidence was proper to establish defendant's negligence, and also as bearing upon the question of plaintiff's conduct in the premises. Plaintiff, in the discharge of her own duty to proceed with caution, and exercise due diligence to avoid danger, was, as we have before observed, entitled at the same time to expect the exercise of like reasonable care, and not culpable negligence, on the part of the defendant. *Loucks* v. *Chic., M. & St. P. Ry. Co., supra; Continental Imp. Co.* v. *Stead,* 95 U. S. 161; *Gaynor* v. *Old Colony & N. Ry. Co.*, 100 Mass. 208; *Wylde* v. *Northern R. Co.*, 53 N. Y. 161; *Eppendorf* v. *Brooklyn City & N. R. Co.*, 69 N. Y. 195; *Owen* v. *Hudson R. R. Co.*, 35 N. Y. 516; Shear. & Redf. Neg. § 31.

Order affirmed.