THE ST. LOUIS & SAN FRANCISCO RAILWAY COMPANY
v. SARAH E. DAWSON.

No. 12,438.   ( 67 Pac. 521.)

SYLLABUS BY THE COURT.

1. RAILROADS — *Injury to Traveler at Crossing — Contributory
Negligence—Question for Jury.*   The attempt of a traveler to
cross in front of an engine or a train standing near the crossing is
not generally so inherently dangerous as to preclude a recovery of
damages if the engine or train is unexpectedly started forward
upon her, but in most such cases the question whether she has
been guilty of negligence will go to the jury, especially where it
moves upon her without giving any signals.   Under the facts in
this case, the district court did not err in holding the general rule
as above stated to be applicable thereto.

2. ——— *Negligence of Engineer—Rights of Traveler on High-
way.*   A traveler upon a public city street, passing in front of an
engine fired up and manned, standing without the bounds of the
highway, but so near it that from the cab windows the street and
objects within it can be plainly seen, has a right to assume that
the engineer will not, without warning, start his locomotive and
run over her upon the street before she can, while proceeding with
haste and in the exercise of ordinary care and caution, cross the
tracks upon which the engine is standing when she makes the at-
tempt so to do.

Error from Crawford district court; WALTER L.
SIMONS, judge.   Opinion filed January 11, 1902.   Af-
firmed.

STATEMENT.

THIS action was begun by defendant in error, plaintiff below, in the district court of Crawford county, to recover damages for personal injuries alleged to have been caused by the negligence of plaintiff in error, defendant below. A jury trial was had and a verdict returned in favor of plaintiff below for $1000, upon which verdict judgment was entered, and from which judgment these proceedings in error are prosecuted.

Plaintiff below in her petition alleged that defendant below owned and operated a railroad extending eastward through the city of Pittsburg, Crawford county, Kansas; that Elm street, in said city, extended north and south, and was crossed by defendant's road at right angles; that at seven o'clock A. M. on the 21st day of December, 1892, plaintiff was traveling south on the sidewalk on the west side of Elm street; that when she reached defendant's track there was a locomotive standing still, west of the sidewalk, and with the end of its pilot within two or three feet of the west edge of the sidewalk; that plaintiff stopped for two or three minutes to see if the engine was about to move, and then attempted to cross the track; that when she was about midway between the rails of the track the person in charge of the engine, without notice or warning of any kind, suddenly started the engine forward toward the east and violently struck plaintiff with the pilot of the engine, throwing her forcibly to the ground, injuring and bruising her and breaking her left arm, whereby she was permanently and seriously injured and suffered severe physical and mental pain and anguish, to her damage in the sum of $1200; that said injuries were caused by the "gross and wanton negli-

Railway Co. v. Dawson.

gence of defendant . . . in running said engine on and upon said plaintiff while on said street and sidewalk, and in violently starting said engine forward from a standing position without any notice or warning to plaintiff"; that plaintiff had been unable to work, whereby she was damaged in the sum of $500, was compelled to employ medical attendance, to her damage in the sum of $74, and to employ a nurse, to her damage in the sum of $25. Plaintiff asked damages in the sum of $1800. Defendant answered: (1) A general denial; (2) contributory negligence. Special questions of fact were submitted to the jury and answered as follows:

"1. How old was plaintiff at the time of the accident complained of? Ans. Forty years.

"2. Was the plaintiff a person of sound mind and judgment at the time of the accident? Ans. Yes.

"3. Was plaintiff walking on the west side of Elm street in the city of Pittsburg on the morning of December 21, 1892? Ans. Yes.

"4. Was plaintiff going south on Elm street before she crossed the railroad-tracks of the defendant on the morning of December 21, 1892? Ans. Yes.

"5. What time in the morning of December 21, 1892, did plaintiff reach the crossing of Elm street? Ans. Twenty minutes to seven, A. M.

"6. Did plaintiff cross one or more tracks of defendant before reaching the one on which she claimed she was injured? Ans. Yes.

"7. Did plaintiff see an engine standing on the track when she approached the same? Ans. Yes.

"8. Did plaintiff cross the track on which the engine stood immediately upon reaching it, or did she stop and wait before crossing? Ans. Waited.

"9. If plaintiff stopped and waited, how long did she wait before crossing? Ans. Three or four minutes.

"10. How wide was Elm street at the crossing? Ans. About sixty or seventy feet.

"11. Was plaintiff compelled to cross the railroad-track on which the engine was standing immediately in front of the engine, and did she do so voluntarily? Ans. She did it voluntarily.

"12. When plaintiff started to cross, did she hurry across or walk slowly? Ans. Fast walk.

"13. How far was the nose of the pilot of the engine west of the west edge of the sidewalk when plaintiff started across. Ans. Three or four feet.

"14. Was the engine standing still when plaintiff started to cross the track, or was it moving slowly forward? Ans. Standing still.

"15. Was the engine in plain view of the plaintiff when she stood and waited before going across defendant's track? Ans. Yes.

"16. Was the engine steamed up and ready to move at the time plaintiff arrived at said crossing? Ans. Yes.

"17. Was steam escaping from the cylinder-cocks on the engine while plaintiff stood and waited before going across defendant's track? Ans. Yes.

"18. Was there anything to obstruct plaintiff's view of the engine while she stood and waited on the sidewalk? If so, what? Ans. No.

"19. Was there anything to prevent plaintiff from crossing said track at a safe distance east from where the engine stood? If so, what? Ans. Nothing.

"20. When did plaintiff first discover that she was injured? Ans. After walking south about 100 yards and returning.

"21. Why did plaintiff stop and wait before crossing defendant's track? Ans. To see if engine was going to move.

"22. If plaintiff had not stopped and waited when she arrived at defendant's tracks would the injury complained of have occurred? Ans. No.

"23. Did plaintiff have ample opportunity to cross defendant's tracks with safety from the time she arrived at the same until the time the engine started up? Ans. Yes.

"24. Did plaintiff have reason to believe said en-

gine might start up at any minute at the time she started to cross defendant's tracks? Ans. No.

"25. Before plaintiff started across defendant's track, after stopping and waiting, did she say anything to the men on the engine? If so, what? Ans. No.

"26. Did the men on the engine see plaintiff as she approached the track or while she stood and waited before crossing? Ans. No evidence to that effect."

"35. If you find for plaintiff, how much do you allow her for physical suffering? Ans. $700."

"41. If you find for the plaintiff how much do you allow her for loss of time? Ans. $300."

"44. Was plaintiff familiar with the crossing where the accident complained of occurred? Ans. Yes.

"45. Was the street, at the point where the accident complained of occurred, dry or muddy? Ans. Dry.

"46. What was the condition of the weather on the morning of the 21st of December, 1892? Ans. Cloudy."

There was evidence in the case tending to show that the only sidewalk upon Elm street at the place where the accident occurred was the one on the west side thereof, which was followed by the plaintiff; that locomotive No. 160 of the railway company was brought from the roundhouse on to the tracks between six and seven o'clock on the morning of the accident, and the men in charge thereof testified that from their places in the cab they could have seen Mrs. Dawson if she had gone in front of the engine, as she claims she did. They denied any knowledge of her presence or injury, but, from all of the facts and circumstances in the case, the jury undoubtedly believed that she was injured by that engine, substantially in accordance with her testimony.

The errors assigned are as follows :

1. The court below erred in overruling the objection of plaintiff in error, defendant below, to the introduction of any evidence under the petition, for the reason that the petition did not state facts sufficient to constitute a cause of action.

2. The court below erred in overruling the demurrer of plaintiff in error, defendant below, to the evidence of defendant in error, plaintiff below.

3. The court below erred in refusing to instruct the jury to return a verdict in favor of defendant, as requested by plaintiff in error, defendant below.

4. The court below erred in refusing to give to the jury the following instruction, requested by plaintiff in error, defendant below :

"11. You are further instructed that under all the circumstances of this case it was plaintiff's duty to watch defendant's engine carefully during all the time she was crossing defendant's track ; and if you find from the evidence in this case that plaintiff was not so watching defendant's engine, then she was guilty of negligence and cannot recover."

5. The court erred in instructing the jury as follows :

"It was the duty of the plaintiff in crossing the said track to use and exercise ordinary care to avoid injury ; and if she failed to exercise ordinary care, or in other words, if she was guilty of ordinary negligence which contributed directly or proximately to the alleged injury, then the defendant is not liable for the alleged injuries, even if they were received by her. By ordinary care is meant that degree of care which men in general exercise in respect to their own concerns ; and by ordinary negligence is meant the omission or want of that degree of care which men in general exercise in respect to their own concerns. The burden of proof is upon the defendant to show by a preponderance of the evidence that the plaintiff was

guilty of contributory negligence. With that exception, the burden of proof is upon the plaintiff to prove her case by a preponderance of the evidence.''

6. The court below erred in overruling the motion of plaintiff in error, defendant below, for judgment on the special findings of the jury.

7. The court below erred in overruling the motion of plaintiff in error, defendant below, for a new trial.

*J. W. Gleed, John L. Hunt,* and *D. E. Palmer,* for plaintiff in error.

*Morris Cliggitt,* for defendant in error.

The opinion of the court was delivered by

ELLIS, J. : The principal matter for consideration in this case is the contention of the plaintiff in error that the conduct of Mrs. Dawson in attempting to cross in front of an engine fired up and manned, as if ready to move, was negligence *per se,* wherefore it became the duty of the court below so to declare, and to refuse to submit the question of contributory negligence to the jury. If the rules hitherto laid down by this and other courts in ordinary crossing cases are applicable to the one at bar, the argument made on behalf of this contention would seem to be well supported by authority. It is, however, quite apparent that one who attempts to cross a railroad-track in front of a moving train incurs a much greater danger of injury than does one who essays to pass, on a city street, over a track upon which there is a locomotive not in motion, not within the bounds of the street, but so near it that from the cab windows the engineer and fireman can plainly see the street and objects in it. We shall presently give some of the reasons which serve to distinguish this from the ordinary crossing

case in town or country, although the dissimilarity in the conditions is so great that it seems hardly necessary so to do. Furthermore, several cases are referred to by the plaintiff in error which present features more nearly analogous to the case at bar. These cases will be considered in the order in which they appear in the brief of counsel for the railway company.

From *Weber v. A. T. & S. F. Rld. Co.*, 54 Kan. 389, 401, 38 Pac. 569, 572, the following is quoted :

"Of course, a high degree of care is required of one who attempts to cross over or around cars standing upon a street, and if a person attempts to cross when there is an obvious danger that the train will be moved at any time, he is guilty of negligence."

In that case the person who was injured was a girl sixteen years of age, who attempted to cross over a train standing in the street, by climbing upon the caboose, and even there this court refused to sustain the decision of the court below that the girl was guilty of negligence *per se*, and in the opinion, at page 401, it was said :

"It is not always held to be negligence to pass around or between detached cars standing upon a street. In every case the question is, whether there is such an obvious danger and such a probability of injury as would deter a reasonably prudent person from assuming the risk of passing through or around such cars."

The following extract from the decision in the case of *U. P. Rly. Co. v. Hutchinson*, 39 Kan. 485, 18 Pac. 705, is given :

"The engine was upon the crossing, the defendant in error saw it and appreciated the danger, but seeing it and appreciating it, he voluntarily assumed the risk and must suffer the consequences. He could easily have avoided the danger, either by standing

where he stopped until the engine moved away, or by crossing at the next street, but instead of doing either he deliberately calculated his chances and took the risk.   The facts establish such contributory negligence on the part of Hutchinson as to bar his recovery against the railway company."

In that case Hutchinson was driving a team upon a street of a city.   The engine was near the crossing ; was attached to a train and apparently ready to move. He drove his horses in front of the engine ; they became frightened at the noise thereof and ran away, and the injuries complained of occurred in consequence of the fright given to the team.

The case of *C. K. & W. Rld. Co. v. Fisher*, 49 Kan. 460, 30 Pac. 462, is presented as decisive of the question here being considered.   There the court said :

"The plaintiff voluntarily encountered a known danger, admittedly without exercising his eyesight for a period of time sufficient to enable him to walk ten or twelve feet, in fact, seventeen and one-half feet, and brought himself into collision with a moving railroad-car, which he admitted he could have seen for thirty or forty feet through the dust, and which others saw and heard at a much greater distance.   If the plaintiff had stopped when he arrived within five or six feet of the railroad-tracks and waited until the dust had blown away, he could have seen westwardly in the direction from which this train was coming for many hundred feet along the railroad-tracks ; but he did not stop nor look, but chose rather to encounter the danger blindly.   The general verdict of the jury must have been founded upon some mistake."

In that case it appeared that the plaintiff was very familiar with the crossing, knew that many trains passed there daily, and testified that he saw the train while he was still some distance away from the track where he was about to cross, the train standing at

Railway Co. v. Dawson.

that time near a water-tank.  He expected it to move over the crossing very shortly, and the only excuse he gave for not looking to see whether it would strike him before he could get over was that a gust of wind threw some dust into his eyes so that he could not have seen more than thirty or forty feet, for which reason it is fair to presume he decided not to look at all, although he knew the danger.

Plaintiff in error also refers to the case of *Mehegan v. New York Cent. & H. R. R. Co.*, decided by the supreme court of the state of New York, and reported in 19 N. Y. Supp. 444.  The facts in that case were that the deceased, who was familiar with the crossing, had in charge a small cart and a dog which assisted in drawing it, and as he was attempting to cross one of the tracks of the railroad he was struck by a car on the rear end of a train and killed.  The testimony showed that there were eleven cars in the train, and that at a point twenty-nine feet from the nearest rail of the track which he crossed he had a plain view, without any obstruction, of the roundhouse, and he also had an unobstructed view of the house track for a considerable distance west of the street.  In the opinion the court said :

"It is apparent that any observation made by the deceased must have brought home to his intelligence that these cars were a part of a train which was being switched at this point, and that any pause of the cars at the place named was but a temporary matter, and that they would be immediately moved again."

When analyzed, are such cases parallel in any essential particular with the one at bar ?  In this case the woman, on her way to work, early in the morning, came to the railroad-tracks, and discovered an engine standing with the pilot towards the sidewalk

on which she was walking, three or four feet from the outer edge of it.   When she came within ten or fifteen feet of the occupied track she stopped and waited to see if the engine was about to move forward into the street and across the path.   As it did not move, and as she was in plain view of those who were in charge of it, she decided that it was safe to cross upon the sidewalk, and attempted to do so. She testifies that she was paying particular attention to the engine, but at the time of the trial could not remember whether she saw it start or not.   However, she had no recollection of having seen the engine in motion at all.   Indeed, she appears to have been so confused by the shock and injuries received that for several minutes she did not realize she was seriously harmed, although one of her arms was broken and she was very badly bruised.

It was strenuously contended on the trial, and is strongly urged here, that the woman was not struck by the engine, nor injured in the manner she describes, because it was not possible to start the engine quick enough to run her down before she could have gotten across the track, and at the same time it is gravely claimed that, because the engine was ready to start, she was, as a matter of law, guilty of contributory negligence in attempting to cross in front of it.   It is difficult to harmonize these conflicting propositions. We suppose, however, that the proof offered by the railroad company in the court below as to the time it would require to start an engine standing upon the track was for the purpose of discrediting the testimony of the plaintiff, for it was there, as here, alleged by the railway company that she could not have been injured had she tried to cross at the time and in the manner testified to by her.

Railway Co. v. Dawson.

In support of the rule, if indeed a rule may be said to have been established in cases of crossing over or at the rear of a train, there are at least two considerations which do not exist here. The traveler who attempts to pass around at the rear or between cars in a train is usually so far away from the engine that the enginemen cannot see him, or if they do discover his danger, the train being in motion, it is impossible to control it in time to avoid the accident. In nearly all of the cases to which our attention has been called, there is the further consideration that, the train being upon the street, it was generally required by a city ordinance to move without unnecessary delay. Here there was no infringement upon the right of the public to use the highway. No sound other than those usually attending an engine which has been fired up and standing ready to move was discernible. Those in charge of the engine knew that a public thoroughfare, in general use, ran along immediately in front, and after standing three or four minutes it was clearly the duty of the engineer, before starting his engine, not only to ring his bell and give warning, which he did not do, but also to look into the street in front and see if danger existed that some traveler might be run over. The engine being under perfect control and the entire street being in plain view from its cab, may it be held, as a matter of law, that a traveler was bound to apprehend that the engineer was likely, without notice, to start his engine and run over her before she could cross in front of it?

In Thompson's last work on Negligence, section 1568, the author said :

"It is a sound conclusion that it is the duty of the engineer in charge of a train standing still, before starting his engine across a street, not only to give

timely warning of his intention, but also to see whether his train will not be likely to strike a traveler or frighten his horses."

In *Adams v. Iron Cliffs Co.*, 78 Mich. 271, 44 N. W. 270, 18 Am. St. Rep. 441, it is said :

"It cannot be considered that he was bound to know, as claimed by defendant's counsel, that this train, without any brakeman upon it, and without any warning, was liable to move at any moment.   How often in cities, where a number of tracks cross the street, do men and women pass around the end of stationary trains, when perhaps if they should happen to trip, and fall across the track, and the train start suddenly, without previous warning, they might be caught under it.   In such a case, if the railroad employees were negligent, would it be said, as a matter of law, that the contributory negligence of the person injured must preclude recovery ?   I think not, and that the facts and circumstances would properly be submitted to a jury, for them to determine whether or not there was negligence in such an attempted crossing."

In *Palmer v. Detroit etc. Rld. Co.*, 56 Mich. 1, 22 N. W. 88, it was said :

"When the plaintiff exercises no care to avoid the danger, and there is no dispute in the testimony upon the point, the question then becomes one for the court ; but when the evidence shows or tends to show that the plaintiff was vigilant in his efforts in the right direction to avoid the danger, but they did not go to the extent for any reason of securing his escape, it is for the jury to say, under all the circumstances, whether he was negligent in not exercising more care or in making greater efforts to prevent the injury complained of ; and especially in a case where, if the defendant had performed its duty, the plaintiff would have been likely to have avoided the danger altogether."

In *L. S. & M. S. Rly. Co. v. Bodemer*, 139 Ill. 596, 29 N. E. 692, 32 Am. St. Rep. 218, the supreme court of

Illinois quoted with approval the following language from *Harlan v. St. Louis, Kansas City & Northern Railway Co.*, 65 Mo. 22:

"When it is said, in cases where plaintiff has been guilty of contributory negligence, that the company is liable, if by the exercise of ordinary care it could have prevented the accident, it is to be understood that it will be so liable if, by the exercise of reasonable care, after a discovery by defendant of the danger in which the injured party stood, the accident could have been prevented, or if the company failed to discover the danger through the recklessness or carelessness of its employees, when the exercise of ordinary care would have discovered the danger and averted the calamity."

In *Loucks v. Chicago, Milwaukee & St. Paul Ry. Co.*, 31 Minn. 529, 18 N. W. 651, it is said:

"One who is called upon to exercise care to avoid danger from the acts of others may, in regulating his own conduct, have regard to the probable or apprehended conduct of such other persons, and to the presumption that they will act with reasonable caution and not with culpable negligence."

In 1 Shearman & Redfield on Negligence (5th ed.), section 92, it is stated:

"As there is a natural presumption that every one will act with due care, it cannot be imputed to the plaintiff as negligence that he did not anticipate culpable negligence on the part of the defendant or of a stranger. He has a right to assume that every one else will obey the law (including not only the common law but also any statutes or city ordinances), and to act upon that belief."

In *Hutchinson v. St. Paul, Minneapolis & Manitoba Ry. Co.*, 32 Minn. 398, 21 N. W. 212, the court said:

"Plaintiff, in the discharge of her own duty to proceed with caution and exercise due diligence to avoid

danger, was, as we have before observed, entitled at the same time to expect the exercise of like reasonable care, and not culpable negligence, on the part of the defendant."

In 2 Shearman & Redfield on Negligence (5th ed.), section 475, it is said : "No presumption of negligence arises from an attempt to cross in front of a stationary train or engine."

In Thompson on Negligence, section 1677, the author says :

"The attempt of a traveler to cross in front of an engine or a train standing near the crossing is not generally so inherently dangerous as to preclude a recovery of damages, if the engine or train is unexpectedly started forward upon him, but in most such cases the question whether he has been guilty of negligence will go to the jury, especially where it moves upon him without giving any signals."

In Elliott on Railroads, page 1770, note 4, occurs the following :

"We suppose that it cannot invariably be held negligence for a traveler to cross in front of a motionless locomotive, but if he knows, or ought to know by the exercise of care proportionate to the dangers incident to railroad crossings, that the locomotive is about to be put in motion or to be started, he is guilty of negligence if he assumes to risk crossing before it has passed."

For the reasons given, and following the authorities quoted, we conclude that the court below did not err in refusing to hold as a proposition of law that the plaintiff below was guilty of contributory negligence, and therefore could not recover in the action.

In language less liable to be misunderstood, the court below gave the jury, in substance, the essential

8—64 KAN.

parts of instruction No. 11 above quoted, which was refused.

The only complaint made of the instruction set out in assignment of error No. 5 is that the court advised the jury that "the burden of proof is upon the defendant to show by a preponderance of the evidence that the plaintiff was guily of contributory negligence," citing *Railway Co. v. Merrill,* 61 Kan. 671, 60 Pac. 819, and *Railroad Co. v. Burrows,* 62 id. 89, 61 Pac. 439. This instruction must, of course, be read in connection with the other instructions in the case, and, taking the instructions all together, we do not think the particular clause of the one referred to was liable to leave upon the jury "the impression that unless defendants by their evidence established contributory negligence, the defense of such contributory negligence must fail." (*Railway Co. v. Merrill,* supra.)

When they are all considered together in connection with the undisputed facts in the case, we do not think the findings are so inconsistent with each other that they ought to have been set aside, and because they sustain the general verdict the court did not err in denying the motion of the railway company for judgment upon them. While it is true, as counsel for the plaintiff in error avers, that "the engine was in plain view of plaintiff all the time, and that she knew the engine was standing there steamed up and ready to move, and with a man on the engine ready to move it," it is also true that the woman was in plain view of the man on the engine all the time, and if he did not see her, it was his duty so to do, and, as above stated, she had a right to assume that he would not, without warning, run the engine over her upon a public highway.

This case has been twice tried, and separate juries

have found in favor of the plaintiff below upon all the essential facts of the case.   It is not claimed that the amount of the judgment is so great as to tend to show passion or prejudice on the part of the jury at the last trial, and a careful examination of the record convinces us that, since the verdict was approved by the trial court, it ought not to be here disturbed.

The judgment of the court below is affirmed.

CUNNINGHAM, POLLOCK, JJ., concurring.