THE ATCHISON, TOPEKA & SANTA FE RAILWAY
COMPANY v. JAMES A. WILKIE.

No. 15,092.   (90 Pac. 775.)

1. RAILROADS—*Injury at a Crossing—Contributory Negligence.* It was said one who attempted to drive over a public crossing in front of an engine which was standing still, with no sign or indication of an attempt on the part of the enginemen to move it, was not guilty of contributory negligence *per se.*

2. —————— *Duty to Ring the Bell.* . Under the circumstances it was said to have been the duty of those in charge of the

engine, regardless of any statutory requirement, to ring the bell before starting the engine over the crossing.

3. ——— *Proximate Cause.* It was said that the negligent moving of defendant's engine without first giving a warning of the intention to do so was the proximate cause of the frightening of plaintiff's horse.

Error from Dickinson district court; OSCAR L. MOORE, judge. Opinion filed June 8, 1907. Affirmed.

*William R. Smith, O. J. Wood,* and *Alfred A. Scott,* for plaintiff in error.

*Edward C. Little,* for defendant in error.

*Per Curiam:* This is an action for damages for injuries received at a railway-crossing on one of the public streets of Abilene. The jury found a verdict for $825 in favor of plaintiff, and, among other special findings, returned the following:

"(6) Ques. Was not the engine moving very slowly at the time the plaintiff's horse became frightened? Ans. Yes."

"(8) Q: On the night in question, did the trainmen make up the train at Abilene in the usual and proper manner? A. No.

"(9) Q. In making up the train on the occasion of the accident to the plaintiff was it necessary to run the engine across Buckeye avenue? A. Yes."

"(12) Q. If you find for the plaintiff, then state what negligent act or omission resulted in the injury to the plaintiff. A. By not ringing bell.

"(13) Q. Did the plaintiff see the engine which he claims frightened his horse before he had reached the south side-track and before he attempted to cross the tracks? A. Yes."

Buckeye avenue runs north and south. Three tracks of the railway company cross this street leading east. The north track runs a little southeast. It was almost dusk, about 7:30 in the evening, when plaintiff, who was driving a horse and buggy, approached the crossing from the south. Plaintiff's evidence tended to show that at a safe distance he stopped, looked and listened,

and, seeing the engine standing still, with the pilot near the west side of the street, attempted to drive across the street in front of it, not expecting it to be moved. There was evidence that when he was on the tracks the engine started east on the north track, suddenly, without warning, coming directly toward his horse, which became frightened, and, throwing him out, caused the injuries for which he recovered.

The principal contention is that the court erred in not rendering judgment on the special findings. Plaintiff was not guilty of contributory negligence *per se* because he attempted to drive over a public crossing in front of an engine which he testifies was standing still, with no sign or indication of an intention on the part of the enginemen to move it. (*Railway Co. v. Dawson,* 64 Kan. 99, 67 Pac. 521.) In volume 2 of Thompson's Commentaries on the Law of Negligence, section 1677, it is said:

"The attempt of a traveler to cross in front of an engine or a train standing near the crossing is not generally so inherently dangerous as to preclude a recovery of damages, if the engine or train is unexpectedly started forward upon him, but in most such cases the question whether he has been guilty of negligence will go to the jury, especially where it moves upon him without giving any signals."

.(See, also, 3 Ell. Railroads, 1770, note 4.)

The authorities relied upon by the railway company are largely those in which the train was either approaching the crossing or the engine was fired up and manned, with all appearances of being about to move over the crossing.

It is said that there was no occasion for ringing the bell because plaintiff saw the engine and was bound to take notice that it might be moved. But was he not justified in assuming that, under the circumstances, it would not be moved over the crossing without some signal being first given? . There is no statute requiring the giving of signals upon approaching a crossing of a

public street in a city, but the duty to give such signals often rests upon those in charge of an engine or train before starting it across the street.

"It is a sound conclusion that it is the duty of the engineer in charge of a train *standing still*, before starting his engine across a street, not only to give timely warning of his intention, but also to see whether his train will not be likely to strike a traveler or frighten his horses." (2 Thomp. Com. Law of Neg. § 1568.)

In the present case, while the engine was standing still several vehicles were using the crossing. Plaintiff had started to cross before the engine moved and must have been in plain view of those in charge of it had they kept the usual lookout. It was their duty, regardless of any statutory requirement, to ring the bell before starting the engine over the crossing, as well as to take precautions not to strike the plaintiff or to frighten his horse. Ordinary caution and prudence imposed these duties, under the circumstances.

It is true, as argued, that the ringing of the bell might have frightened the horse, but the company would not have been liable for merely ringing the bell in the usual manner, unless there was some circumstance that made it negligence to do so.

It is insisted that in any event the failure to ring the bell was not the proximate cause of the injury. The finding that the failure to ring the bell was the negligent act must be construed as meaning the starting of the engine without first ringing the bell. Of course, if the engine had not been moved, the failure to ring the bell could not have caused the horse to frighten. The proximate cause in the law of negligence is not the cause nearest in point of time or in sequence of events. There may be, and frequently is, an intervening agency —something which it is only reasonable to expect would or might happen; and in such cases the remoter cause in point of time or in sequence of events is said to be the proximate cause, for the reason that the final

result was made possible by the first negligent act or omission. (*A. T. & Santa Fe Rld. Co. v. Stanford*, 12 Kan. 354, 15 Am. Rep. 362; *C. R. I. & P. Rly. Co. v. McBride*, 54 Kan. 172, 37 Pac. 978.) . In the Stanford case it was said:

"Any number of causes and effects may intervene between the first wrongful cause and the final injurious consequence; and if they are such as might, with reasonable diligence, have been foreseen, the last result, as well as the first, and every intermediate result, is to be considered in law as the proximate result of the first wrongful cause." (Page 377.)

.The moving engine in this case frightened the horse; but the negligence was in moving it without first giving a warning of the intention to do so, and this was the proximate cause of the horse's becoming frightened.

The case of *St. L. & S. F. Rly. Co. v. Payne*, 29 Kan. 166, which is cited, is in no sense a parallel one. There the team was standing tied near a crossing outside the limits of a town or city. It was said that the failure to sound the whistle eighty rods from the crossing could not have been the cause of the team's becoming frightened. The owner was not using the highway and not expecting to do so. His claim was that if the whistle had sounded he would have come from the mill and looked after his team. It was held that the company owed him no duty under the statute. In the present case plaintiff was using a public crossing, and, while no statutory duty was imposed upon the company, there was the duty to give travelers warning before starting the engine across the street, under the circumstances as they existed. The evidence tended strongly to show that the men in charge of the engine started it over the crossing without being aware, as they should have been, that plaintiff was on the crossing, and only discovered his presence after he was thrown out.

We have found nothing prejudicial in the instructions or in the other matters of which complaint is made, and therefore the judgment is affirmed.