[No. 7975. Department Two. September 25, 1909.]

## Maggie Grant, *Appellant*, v. Oregon Railroad & Navigation Company, *Respondent*.[1]

RAILROADS — CROSSINGS — NEGLIGENCE—WARNING—EVIDENCE—SUFFICIENCY. The evidence is sufficient to show negligence upon the part of a railroad company in switching cars at a public crossing where people were in the habit of crossing, when no warning was given by bell, whistle, or lookout on the freight car backed upon the crossing.

SAME—CONTRIBUTORY NEGLIGENCE—FAILURE TO LOOK AND LISTEN—ACTS IN EMERGENCY. One run down at a railroad crossing is not guilty of contributory negligence as a matter of law, in going upon the track without stopping to look or listen, where she had just alighted from a buggy, her attention was diverted by the fright of the horses, and she involuntarily backed onto the track in an endeavor to get out of the way of the team.

SAME—QUESTION FOR JURY. A woman is not guilty of contributory negligence, as a matter of law, in alighting from a buggy within six to ten feet from a railroad crossing in a place of safety, but so close that she was crowded onto the track by the fright of the horses, where there was no indication of an approaching train likely to frighten the horses, which were used to trains and ordinarily gentle.

EVIDENCE—DECLARATION—RES GESTAE. In an action for personal injuries sustained at a railroad crossing, the rejection of evidence of declarations of the train crew, offered as part of the *res gestae*, is discretionary.

Appeal from a judgment of the superior court for Spokane county, Sullivan, J., entered September 18, 1908, in favor of the defendant, by direction of the court, upon withdrawing the case from the jury, after a trial on the merits,

[1]Reported in 103 Pac. 1126.

in an action for personal injuries sustained by a pedestrian
at a railroad crossing. Reversed.

*Gray & Knight* and *Alex M. Winston,* for appellant.

*W. W. Cotton, Arthur C. Spencer, Samuel R. Stern,* and
*Ralph E. Moody,* for respondent.

PARKER, J.—By this action plaintiff seeks to recover dam-
ages for personal injuries caused by being run over by a car
of defendant, at a public crossing adjacent to and immedi-
ately west of its passenger depot, at Harrison, Idaho, on
June 17, 1907. The negligence charged against the defend-
ant in the complaint is, in substance, that several cars were
being pushed by an engine of defendant rapidly over its
track near and upon the crossing; that no bell was rung on
the engine, no whistle blown, and no notice or signal of any
kind given of the approach of the train before coming to the
crossing; that no proper lookout was kept in front of the
train, no brakeman or other employee being on the front car,
or stationed at the crossing to keep a lookout or give signals
of warning; and that the employees upon the train were in the
rear thereof and upon the engine. The defendant by its
answer denies the material allegations of the complaint, and
affirmatively alleges that the injuries of defendant were re-
ceived by her own want of care, and by reason of her con-
tributory negligence, which affirmative allegations were de-
nied by plaintiff's reply. Upon a trial before the court and a
jury, at the conclusion of the plaintiff's evidence, defendant's
attorneys challenged the sufficiency of the evidence to show
liability on the part of the defendant, moved the court to
withdraw the case from the consideration of the jury, and
render judgment for defendant dismissing the cause, upon
the grounds that the evidence failed to show that the defend-
ant was negligent in any manner or respect, and also that the
evidence conclusively showed that the injuries to the appellant
were caused by her own fault and want of care, and that the
proximate cause of the injuries was her own contributory neg-

ligence. The court granted the motion and rendered judgment accordingly. Thereafter, upon the denial of the plaintiff's motion for a new trial, she appealed to this court, where the principal contention of her attorneys is that the learned trial court erred in thus disposing of the case.

From the record it appears that a public road leads down and along the side of a steep hill from the business portion of Harrison to the depot and crossing where the accident occurred. This public way not only leads to the depot, but also to a steamboat landing but a short distance across the track and beyond the depot, crossing the railroad track near the end of the depot. At the end of the depot, the ground has been leveled from the track close into the hillside, so as to enable teams and vehicles to turn there. On the day of the accident, the appellant with her grandchild was being taken down this road by a Mr. Wheeler in a buggy, with a view to taking the boat at the landing just across the track beyond the depot. While coming down the hill, appellant saw an engine standing on the track in the yard not far from the depot, some distance from the crossing, but did not afterwards notice or pay any attention to it. On arriving at the crossing, Mr. Wheeler stopped his buggy parallel with, and from six to ten feet from, the track, turning his horses' heads toward the hill and away from the track to enable appellant and the child to alight and to go to the boat across the track, intending to turn his team in the level space there and return up the hill without crossing the track. He then got out holding the lines in one hand, assisted the appellant and child to alight, reached in the vehicle for appellant's traveling bag and handed it to her, when there came a very loud exhaust of steam from the engine, or as Wheeler describes it, "four or five or six explosions or exhausts or coughs," causing the horses to become immediately much frightened. Using Wheeler's words,

"And the horses jumped, the off horse or the horse that was next the railroad track crouched down, and the other

horse plunged ahead, and that threw the horses towards the
railroad track, cramping the buggy the other way, towards
the railroad track, and as they plunged forward, I grabbed
the lines in my other hand, in both hands, and surged back on
them, and then they backed up probably six feet, and then I
straightened them out, of course they were plunging as soon
as the exhaust was coming from the engine."

The appellant and child being between the buggy and the
track, she grabbed the child by the hand and backed away
from the buggy and frightened horses upon the crossing of
the railroad, and was there run over by the first car of a
short train, which was being pushed by an engine of re-
spondent towards and upon the crossing. The cars were
apparently being moved in switching operations. The first
car was a flat car and the second a coal car with box cars
following. It is apparent that the train ran something more
than the length of the car after she was struck before being
stopped, as she was taken from under the second truck of
the first car, and had been dragged a short distance. No
brakeman or any one was upon the first or second car to
keep a lookout ahead, no bell was rung or whistle blown from
the engine, no flagman was upon the crossing, and no em-
ployee upon the train was nearer than the top of the third
car from the end of the train approaching the crossing. One
witness said the train was going about as fast as a man could
run, another witness said it was going about three times as
fast as a man could walk.

Appellant testified she did not hear the train or the ex-
haust. She says: "I don't know what excited them [horses] ;
I was not thinking anything about it; I was thinking of
getting away from the horses and getting the little girl
away." Wheeler says the horses were accustomed to cars,
and showed no indication of being frightened when he
stopped; that he saw the train, but not until the exhaust
from the engine; then looked up, and saw it coming, the
first car being probably sixty feet from him. Like other wit-
nesses he heard no bell or whistle. He did not see the acci-

dent to appellant, his attention being diverted to his team until they were gotten under control soon thereafter. It was conceded that from the crossing one could see a train in the direction from which this one came a distance of 400 feet. There is substantial agreement among the four eyewitnesses as to the main facts.

Appellant's assignments of error present two principal questions. Was the evidence at the close of appellant's case such that the court could decide, as a matter of law, (1) whether or not respondent's negligence was a proximate cause of the injury; and (2) whether or not appellant's negligence contributed to her injury to the extent that respondent was relieved of liability therefor? We will notice these in their order.

Viewing the evidence as it relates to the question of the respondent's negligence, independently of any contributory negligence on the part of appellant, it seems to us it was beyond question sufficient for the jury's consideration. The train was backed towards and upon this public crossing where many people were in the habit of passing, no bell was rung, no whistle was blown, no employee was on the first or even second car, nor at the crossing to give warning of the approaching train. According to this evidence, respondent was negligent in not exercising even the least of ordinary care. Indeed, it entirely failed in that regard, and pushed these cars upon this public crossing as though it were not there, without giving any warning whatever such as is usually given at such places. There was abundant evidence, if believed by the jury, to support a finding of negligence against the respondent. 3 Elliott, Railroads, §§ 1156, 1158; Beach, Contributory Negligence (3d ed.), § 194; *Cooper v. Lake Shore & M. S. R. Co.*, 66 Mich. 261, 33 N. W. 306, 11 Am. St. 482; *Duame v. Chicago & N. W. R. Co.*, 72 Wis. 523, 40 N. W. 394, 7 Am. St. 879; *Fisher v. Monongahela R. Co.*, 131 Pa. St. 292, 18 Atl. 1016; *Cleveland etc. R. Co. v. Carey*, 33 Ind. App. 275, 71 N. E. 244; *Atchison etc. R. Co. v.*

*Wilkie*, 77 Kan. 791, 90 Pac. 775, 11 L. R. A. (N. S.) 963;
*Williams v. Chicago etc. R. Co.*, 78 Neb. 695, 111 N. W.
596, 14 L. R. A. (N. S.) 1224; *Roth v. Union Depot Co.*,
13 Wash. 525, 43 Pac. 641, 31 L. R. A. 855. And unless
it can be determined, as a matter of law, from the evidence
that appellant was guilty of such contributory negligence as
relieved respondent of liability, it was error to take the case
from the jury.

Upon the question of appellant's contributory negligence,
we are at the outset met with the contention of learned counsel
for respondent that the failure of appellant to stop, look and
listen for the approach of a train at this crossing makes her
guilty of negligence *per se*, under the previous decisions of
this court, citing in support of this contention: *Woolf v.
Washington R. & Nav. Co.*, 37 Wash. 491, 79 Pac. 997;
*Baker v. Tacoma & Eastern R. Co.*, 44 Wash. 575, 87 Pac.
826; *Anson v. Northern Pac. R. Co.*, 45 Wash. 92, 88 Pac.
1058; *Gregg v. Northern Pac. R. Co.*, 49 Wash. 183, 94
Pac. 911; *Cable v. Spokane & Inland Empire R. Co.*, 50
Wash. 619, 97 Pac. 744. In all of these cases, however, the
injured party knowingly and voluntarily went upon the
track without obeying the well-established general rule here
invoked by counsel. None of them were impelled to go upon
the track other than by their own free will; and this we
think clearly distinguishes the facts in those cases from the
position of this appellant and the cause which impelled her
to back away from the buggy and frightened team upon the
crossing where she was run down by respondent's train. The
rule is not without its qualifications. One may be under the
influence of such real or apparent danger, from a source
other than the crossing and approaching trains, as to cause
him to involuntarily go upon the crossing in an attempt to
escape such danger, which for the moment may be absorbing
his entire attention, and thus be exonerated from the imputa-
tion of negligence in failing to stop, look and listen. Nor
need the diverting influence necessarily be a danger from

which escape is sought. In a case where there is evidence to show such a situation and diverting influences that reasonable men might reach different conclusions as to whether or not the person so involved acted as a reasonably and prudent person would act under the circumstances, the question of negligence of such person in failing to stop, look and listen, becomes one of fact for the jury.

In the case of *Lorenz v. Burlington C. & N. R. Co.*, 115 Iowa 377, 88 N. W. 835, 56 L. R. A. 752, the deceased was struck by a train at a crossing and killed while attempting to head off and drive back a cow which had escaped from his control, his attention being thus diverted for the moment from the dangers of the crossing. Justice McClain, speaking for the court, presents such a clear statement of what we conceive to be the true rule and its application, that we quote from his language at some length:

"It is further contended that the court erred in instructing the jury in such a way as to allow them to determine whether the facts and circumstances surrounding the accident were of such a dangerous, complicated, and confusing character as would be calculated to cause a person of ordinary prudence and caution, under the same conditions, to forget for the instant his dangerous position. It is to be borne in mind that one who is guilty of contributory negligence in connection with his injury is precluded from recovering for such injury, not because of a direct breach of duty towards the person whose negligence has primarily caused the injury, but because he cannot recover for an injury to which his own fault has in any way contributed. The negligence of the one party and the contributory negligence of the other are wholly distinct and independent considerations, and the contributory negligence of the person injured may preclude recovery by him, although it had no influence or effect whatever on the party causing the injury, or, for that matter, was entirely unknown to him. Therefore, in determining what constitutes contributory negligence, we are not to consider what care the person causing the injury had reason to suppose the other person would use, but only whether the person injured did use the care which the circumstances required of him. Now,

while the rule is well settled in this state, and generally else-where, that it is contributory negligence for a person to go upon a railway track without looking or listening to ascertain whether there is danger from an approaching train, yet his duty in that respect is to exercise the care which reasonably prudent persons would exercise under such circumstances. The duty to look and listen is not an absolute one, but one the exercise of which is dependent on conditions. Certainly a person who should rush to rescue a child from danger on a high-way, due to an approaching runaway team, might be excused for not stopping to look and listen for a possible train on a railway track which he must cross in order to reach the child. The qualification of the rule, which justifies the taking into account of the surrounding circumstances in determining whether there was negligence in failing to look and listen, is well established. *Howland v. Union Street R. Co.*, 150 Mass. 86, 22 N. E. 434; *Wasmer v. Delaware, L. & W. R. Co.*, 80 N. Y. 212, 36 Am. Rep. 608; *Thompson v. New York C. & H. R. R. Co.*, 110 N. Y. 636, 17 N. E. 690; *Kane v. Northern C. R. Co.*, 128 U. S. 91, 9 Sup. Ct. Rep. 16, 32 L. Ed. 339. And this qualification has been recognized by this court. *Funston v. Chicago, R. I. & P. R. Co.*, 61 Iowa 452, 16 N. W. 518; *Lichtenberger v. Meriden*, 91 Iowa 45, 58 N. W. 1058. The question whether, then, in view of the purpose with which deceased went upon the track, and the circumstances under which he did so, he was exercising the reasonable care which an ordinarily prudent man would exercise under the circumstances, was for the jury."

Following the view of the Iowa court as expressed in this opinion, the supreme court of Idaho has recently decided the case of *Wheeler v. Oregon R. & Nav. Co.* (Idaho), 102 Pac. 347, which involved the death of this child by this same acci-dent, in which case the contributory negligence of this same appellant was relied upon as a defense, the child being then in her charge. The facts of that case, as related in the opinion, show that the proof was substantially the same as here, and it was held that the question of appellant's con-tributory negligence was one of fact, and rightly submitted to the jury. Shearman & Redfield, Negligence (5th ed.), § 89; *Chattanooga Elec. R. Co. v. Cooper*, 109 Tenn. 308,

70 S. W. 72; *International & G. N. R. Co. v. Neff*, 87 Tex. 303, 28 S. W. 283; *Alabama & V. R. Co. v. Lowe*, 73 Miss. 203, 19 South. 96; *Nebraska Telephone Co. v. Jones*, 60 Neb. 396, 83 N. W. 197.

Learned counsel for respondent contends that the situation in which the appellant was placed did not relieve her from exercising the care required by the rule invoked. That is, her position was not fraught with such peril as relieved her from the duty to stop, look and listen before approaching the crossing. We cannot so determine, as a matter of law, in view of the surroundings shown by the evidence in this case. She was between the track at her back and the buggy and frightened horses in front, with her attention directed upon the team, and according to her own testimony, not knowing even what excited them, was not thinking of it, but was thinking of getting away from the horses and getting the little girl away. Her failure to notice the loud exhaust from the engine so plainly heard by the others, might well be attributed to the fright of the horses attracting her attention which occurred practically at the same instant. Whether or not she acted at that moment as a reasonable person under the circumstances, as they appeared to her, was, it seems to us, a question of fact for the jury.

It is also argued that, since this situation in which appellant was placed was not caused by the act or negligence of respondent, she was not relieved from the duty of exercising the same degree of care in going upon the crossing as though there was nothing there to divert her attention. The only case cited by counsel or called to our notice in support of this contention is that of *Trowbridge's Adm'r v. Danville Street-Car Co.* (Va.), 19 S. E. 780. While that decision, and possibly others, may lend support to counsels' position, we think the weight of authority, as well as the sounder reason, is to the contrary, as shown by the foregoing citations. The following from the supreme court of Tennessee, in *Chatta-*

*nooga Elec. R. Co. v. Cooper, supra,* at page 312, is especially in point:

"But it is a mistake to assume, as is done by the plaintiff in error, that the application of this rule is restricted to cases where the peril producing the confusion of judgment, and the consequent false effort to escape, is the negligent act of the party creating the peril. Judge Elliott, in section 1173, vol. 3, of his work on Railroads, says: 'The rule goes further than to exonerate the traveler where the peril is caused by the railroad company; for if, without fault himself, the traveler is placed in a position of sudden peril by a third person, or by some accident—as, for instance, by horses running away—he may be absolved from exercising that degree of care required of one in ordinary circumstances.' "

We think the reasonableness of the appellant's action is to be determined without regard to whether the cause which diverted her attention from the dangers of the crossing, was produced by the respondent or by some other entirely independent agency.

It is further contended that the situation in which the appellant found herself immediately preceding the accident was brought about through her own negligence and want of care in consenting to Mr. Wheeler driving so near the track and crossing, and her voluntarily alighting there. The evidence shows that the team was gentle and used to the cars; that there was no indication of fright of the team until the instant of the loud exhaust of the engine; that the buggy was stopped parallel with, and from six to ten feet from, the track, witnesses differing to that extent in estimating the distance; that the team was turned away from the track; that at the time they stopped there was no indication of any approaching train so far as noise or signals were concerned; that neither appellant nor Wheeler noticed any approaching train; and that the location was a public crossing used frequently by a great many people. It does not appear just how close to the track and crossing appellant was standing when she commenced to back away from the buggy and

frightened horses, but a jury might reasonably infer from the evidence that she was then in a place of perfect safety so far as the dangers of the crossing alone were concerned, even if a train were approaching; and that she would have remained uninjured but for her movements caused by the frightened team. It might be plausibly argued that, when they drove up to the crossing, stopped from six to ten feet therefrom with the horses turned away from the track, there was then no occasion to stop, look and listen, since they were not then in the act of going upon the track. Appellant had not started to go upon the crossing until thereafter, when she did so involuntarily, and Wheeler had no intention of going upon the crossing at all. We cannot say, as a matter of law, that she was negligent in consenting to be driven to and alighting there. The question of her negligence in placing herself in this position, as well as in backing upon the crossing away from the buggy and frightened horses without stopping, looking and listening, is, in its last analysis, one purely of fact to be submitted to the jury under proper instructions.

The rejection by the court of certain declarations of members of the train crew, made soon after the accident and offered to be proven by appellant's counsel as part of the *res gestae*, we think was not error. Their rejection was an exercise of the court's discretion, which was apparently not abused.

We are of the opinion that the learned trial court committed error in taking the case from the jury, and thus determining the question of negligence as a matter of law. The judgment is reversed with instructions to grant appellant a new trial.

RUDKIN, C. J., MOUNT, DUNBAR, and CROW, JJ., concur.